CASE 19.—ACTION BY NANCY MIDDLETON AND OTHERS AGAINST STEPHEN DANIEL AND OTHERS TO QUIET TITLE TO THEIR LAND.—February 18.

# Daniel v. Middleton, &c.

Appeal from Harlan Circuit Court.

M. J. Moss, Circuit Judge.

Judgment for plaintiffs, defendants appeal—Affirmed.

1. Adverse Possession—Partial Occupancy—Effect.—Plaintiffs having occupied part of the land involved, by inclosing it with a fence and cultivating it, for more than 15 years before entry was made under an adverse patent, claiming it as their own adversely to the world, and their occupancy having been continuous during the whole period, they acquired a prescriptive title to the entire tract.

Daniel v. Middleton, &c.

2. Quieting Title—Relief—Reformation of Instruments.—In an action to quiet title, it was not error to correct a mistake in description in a deed, where all the parties affected were before the court.

W. F. HALL for appellants.

GREEN & VANWINKLE of counsel.

POINTS AND AUTHORITIES.

1. Appellees have no record title or possessory title to any part of the John Fee 200-acre patent in controversy. (Armitage v. Wickliffe, 12 B. M. 494; Campbell v. Disney, 93 Ky. 41; Layne, &c., v. Ferguson, &c., 24 Ky. Law Rep. 444; Bates, &c., v. Collins, &c., 29 Ky. Law Rep. 346; Trimble v. Smith, 4 Bibb 257; Jones v. McCauley's Heirs, 2 Duv. 14; Walter v. Gower, 11 Ky. Law Rep. 750; Smith v. Mitchell, 1 A. K. M. 207; Wilson v. Stevens, 4 Dana 634; Stith v. Jones, 7 Dana 434; Greer, &c., v. Bowling, 21 Ky. Law Rep. 1628; McCoy, &c., v. DeLong, &c., 22 Ky. Law Rep. 719; Hall v. Blanton, &c., 25 Ky. Law Rep. 1400.)

2. The appellants never had any connection with the supposed title of appellees. They are in no way estopped to claim title to the land in controversy. (Perkins, &c., v. Coleman, &c., 90 Ky. 611; Sweetzer vs. Lowell, 33 Me. 446; Altemus, &c., v. Asher, &c., 24 Ky. Law Rep. 2416.)

W. A. BROCK for appellee.

(No brief for appellee.)

OPINION OF THE COURT BY JUDGE BARKER—Affirming.

The appellees, Nancy Middleton and Minerva Sergener (nee Middleton), instituted this action against Stephen Daniel for the purpose of quieting their title to a boundary of land situated in Harlan county, Ky., which is described by metes and bounds in the petition. The appellees (plaintiffs), in their petition, allege themselves to be the owners and in the actual possession of the land described, and

charge that the appellant (defendant), Stephen Daniel, is claiming and giving out in speeches that he owns it, and thereby casting a cloud upon the title of the appellees and diminishing the value of their estate, to remedy which evil they prayed for an injunction quieting their title.   After the defendant, Daniel, had answered, and the pleadings as between him and the plaintiffs had been carried towards an issue, he sold and conveyed the property to his daughter, Margaret Middleton, the wife of Moses Middleton, Sr.  As soon as this conveyance was placed upon record, the appellees amended their petition, making the vendees parties defendant, and asserting the same allegations against them that they had theretofore made against their vendor, Stephen Daniel.   The defendants Moses Middleton and his wife, Margaret Middleton, in reply to the petition, so far as it concerned them, set up title to a body of land which they described by metes and bounds, and denied title of the plaintiffs to the land described in the petition in so far as it lapped or interferred with the tract of land described in their answer.   The two tracts lapped or interferred to the extent of 100 acres, and this interference is the subject of the litigation involved in the record before us.   The plaintiffs alleged title in themselves to the tract of land set up in the petition, including the lap of 100 acres above mentioned, by having had  actual adverse possession of  it for more than 15 years next before the institution of the action by them..  The defendant denied the occupation or holding by the plaintiffs of the lap in question for 15 years, or for any other period of time; and this is the real question in the case.

A history of the transaction out of which grew this litigation is briefly as follows: James T. Middleton

owned a large tract of land in Harlan county, of which that in question was a part. On the 15th day of August, 1882, his brothers, Moses Middleton, Lincoln Middleton, George Middleton, and Galvin Middleton, and his sisters, Abigail Middleton and Minerva Middleton, entered into a contract with him for the purchase of this tract, by which they agreed to pay him $800 for it, and when they did so pay it he agreed in writing to convey the land to them in equal shares. Afterwards the vendees paid the purchase money to the vendor, and thereupon took possession of the tract and divided it among themselves equally. That part which was set aside to Lincoln Middleton is the land described in the petition, and the plaintiffs (appellees) are his children. When the land was divided, each of the vendees took possession of his or her respective share. Lincoln Middleton moved on the land involved herein, and used and occupied it as his own up to his death. After his death his children, who are the appellees here, remained in possession of the property, using and occupying and claiming it as their own against all the world, and are yet in possession of it. Several of the vendees of James T. Middleton applied to him in his lifetime and received deeds for their respective shares, and about this land no trouble has ever arisen. Lincoln Middleton failed to do this, and was killed without having received a deed for his share. After the death of Lincoln Middleton, his brother, Moses Middleton, Sr., who is one of the appellants, was appointed and qualified as the administrator of his estate, and so far as this record shows to the contrary he still occupies that position. In 1902 the appellees, who are the children and only heirs at law of Lincoln Middleton, instituted an action in the Har-

lan circuit court against Moses Middleton and all the other vendees of James T. Middleton, and the heirs of James T. Middleton, for the purpose of obtaining a deed to the land which their father had purchased, and which had been set apart to him by his brothers and sisters in the parol division before mentioned, and for which no deed had ever been made. Such proceedings were had in this litigation that a judgment was rendered against all of the defendants in interest that the plaintiffs were entitled to the deed they sought, and in pursuance of this judgment a deed was made by the commissioner of the court conveying the land described in the petition to the appellees. This deed was placed on record in the Harlan county court in 1905.

The appellants derive their title to the interference in question as follows: In 1848 the Commonwealth of Kentucky issued a patent to one John Fee for a tract of land in Harlan county containing 200 acres. This patent covers a part of the land described in the petition, and the interference thus made is the subject of contention between the parties litigant. John Fee conveyed the patent to one Etheridge, who is long since dead, and his heirs are nonresidents of Kentucky. While the litigation by the appellees for a deed was pending in the Harlan circuit court, Moses Middleton, Jr., a son of appellant, hunted up the heirs of Etheridge and obtained deeds to the patent their father had purchased from John Fee. He afterwards sold his purchase to one Enos Hensley, who sold it to Galvin Middleton, who had the land transferred to his wife, Nancy Middleton, who sold it to Grant Smith, and Grant Smith sold it to Stephen Daniel, one of the appellants here. Stephen Daniel, as said before, sold the land to the appellant Mar-

garet Middleton, wife of appellant, Moses Middleton, Sr. It will thus be observed that the adverse title of the appellees commenced by Moses Middleton, Jr., purchasing an outstanding claim to the property of his cousins, and then by a "round robin" of transfers it was conveyed to his mother, the wife of appellant Moses Middleton, Sr.; the husband paying all the money by which the property was purchased of his father-in-law Stephen Daniel.

There is considerable conflict in the evidence on the crucial points of the case; but we think a preponderance establishes the following facts with reference to the possession of appellees: Lincoln Middleton, in 1882, took possession of the property set aside to him by his brothers and sisters. His house was not within the interference, but he fenced about 20 acres of the lap, and a part of this inclosure was cultivated by him and after his death by his children. At the time of his entry there was no occupancy whatever on the John Fee patent; but some years before this litigation, and after the appellees had occupied and possessed the land claimed by them, as above set forth, for more than 15 years, Robert Middleton, a son of Moses Middleton, Sr., at the instance of his father, built a small house within the interference. The question of law that arises upon this state of facts is whether the inclosure of 20 acres of the interference, with the intention to claim and occupy the whole, gave the appellees such a possession as ripened into a title by prescription after the expiration of 15 years of such occupancy.

The leading case upon this question in Kentucky is that of Fox v. Hinton, 4 Bibb, 559; the opinion being by Chief Justice Boyle. In that case it was held that, where there are two patents interfering

in part, and before possession is taken under the elder patent of any part of the land within its boundary, one deriving title under the junior patent enters upon the land within the interference, with an intention to take possession thereof, the possession of the person making such entry under the junior patent should be construed to be coextensive with the interference; it being said in the opinion: "In such a case, therefore, we can perceive no reason for limiting his possession to his close or fence, especially in this country, where the close or fence is not the usual boundary which separates different tracts or parcels of land from each other."

In the case of Whitley County Land Co. v. Lawson, 94 Ky. 603, 23 S. W. 369, 15 Ky. Law Rep. 401, it was said: "When there are conflicting patents for land, and the junior patentee enters upon and holds the actual possession of a part of the interference, claiming the interference to the extent of his boundary, and the owner of the senior patent is not in the actual possession of his land at the time of such entry and occupancy by the junior patentee, then the junior patentee acquires the actual possession of the whole interference, and the subsequent entry of the senior patentee upon and occupancy of his land outside of the interference does not give him the actual or constructive possession of any part of the interference; nor does his entry upon and occupancy of the interference give him the possession of it, except to the extent of his inclosure."

In the case of Ware v. Bryant's Adm'r, 21 S. W. 873, 14 Ky. Law Rep. 852, the rule was thus stated: "* * * It is well settled in this state that if there is an interference between a junior and senior patentee, and the junior patentee gets the actual posses-

sion of a part of the interference and claims the whole by lines, etc., for as many as 15 years, the senior patentee not being in the actual possession of any part of the older survey, but thereafter enters upon said survey, but not upon any part of the interference, the junior patentee's adverse possession will extend to the whole interference.''

We do not think there is any doubt that a preponderance of the evidence establishes the fact that the appellee had occupied a part of the interference by inclosing it with a fence and cultivating it for more than 15 years before any entry whatever was made under the John Fee patent. They claimed it as their own, adversely to all the world, and their occupancy was continuous during the whole period. Their occupancy ripened into a title by prescription, and the subsequent entry by Robert Middleton within the interference was without avail to divest their title to any part of the property. While Lincoln Middleton originally held under a parol division of the property purchased by him jointly with his brothers and sisters, the property set aside was clearly marked out and defined, and all the parties knew the extent of his claim and the lines which marked his boundary; and especially is this true as to Moses Middleton, who is the real party in interest here, although he placed the property in the name of his wife. He furnished all the money to make the purchase, and he, as stated in his deposition, originally divided the land between his brothers and sisters, and set apart to his brother Lincoln that share which is in controversy here. There is good ground for the belief that the original purchase of the outstanding patent by Moses Middleton, Jr., and the transfer of the title through the various parties until it reached Margarent Middle-

ton, was but a scheme by which Moses Middleton sought to obtain the property of his nieces, by doing indirectly that which he was ashamed to do directly. It would be a curious circumstance if the various purchasers, between Moses Middleton, Jr., and his mother, Margaret Middleton, should have paid their money for property which they knew was in the adverse possession of others, and yet none of them ever made any claim to it, but quietly sold it to some one else until finally it got back into the family of Moses Middleton, Sr. There is but one way that Moses Middleton, Sr., could evade the effect of the judgment of the Harlan circuit court conveying the title to the land in question to his nieces, and that way seems to have been attempted here. That it was unsuccessful is no merit of his. If the John Fee patent had been occupied in any part by the owner, whether in the interference or not, when the entry of appellees or of their father was made, then the rule would be different. Then they would be limited in their claim of title by prescription to their actual inclosure during the whole statutory period. The cases cited by appellants are applicable to the supposed case—not to that shown in the record before us.

There was ingrafted on this action to quiet title another action to correct a mistake in a conveyance of five acres of land by Lincoln Middleton to Nancy Middleton. In his lifetime Lincoln Middleton conveyed five acres of the land set aside to him to one Nancy Middleton, on which she set out an apple orchard. Lincoln Middleton never conveyed the property by deed, although he received the consideration for it. After his death, Nancy Middleton conveyed the property to Moses Middleton, or his wife, Margaret Middleton, and they instituted an action in the

Harlan circuit court and obtained a judgment for a deed to same. In locating the property the commissioner made a mistake and deeded five acres of Lincoln Middleton's land, on which his dwelling house was situated. The appellees, who were plaintiffs below, prayed for a correction of this deed, so that it would convey what Lincoln Middleton really sold to Nancy Middleton. Without going into this small affair with any particularity, we think the mistake was clearly proved, and that the chancellor was right in correcting it. The proceeding may have been somewhat irregular, but all the parties were before the court, and the judgment of correction administered even-handed justice between the parties.

For the foregoing reasons, the judgment of the chancellor, quieting the title of the appellees to the whole tract in question, and correcting the error in locating the five acres involved, is affirmed.