420 P.2d 980

**William A. LONGSHAW and Angela Longshaw, husband and wife, Appellants,**

**v.**

**Robert E. CORBITT, Appellee.***

**No. 2 CA–CIV 258.**

Court of Appeals of Arizona.

Dec. 5, 1966.

this court pursuant to A.R.S. Section 12–120.23.

J. B. Klensin, Tucson, for appellants.

Krotenberg, Laber & Morrow, by Stanley Krotenberg, Tucson, for appellee.

HATHAWAY, Judge.

William and Angela Longshaw, plaintiffs in the superior court, have appealed from the judgment entered in favor of defendant Robert Corbitt and from an order denying their motion for a new trial. In their third amended complaint appellants sought a permanent injunction to keep Robert Corbitt and Mabel Boden from entering upon the north 7 feet of Lot 6 in Block 3 of El Sahuaro Addition to the City of Tucson, Pima County, Arizona; they asked damages, reformation of certain deeds and that their title be quieted in said property.

The relevant facts may be stated as follows: The original grantors in this case, Bernice Geisel, Dr. John E. Geisel and Virginia Geisel Adams, owned Lots 3, 4, 5 and 6 in Block 3 of El Sahuaro Addition, Pima County, Arizona. The El Sol Motel was situated on Lots 3, 4, 5 and on the north 7 feet of Lot 6. An oleander hedge separated the north 7 feet from the rest of Lot 6. We append a diagram showing the relative positions of the property and chain of ownership. On January 29, 1953, the original grantors transferred Lot 6 to William Barringer Geisel (son of Bernice and brother of the other grantors). On May 24, 1955, William Barringer Geisel transferred Lot 6 to Mabel Boden. Then the original grantors by deed of July 29, 1955, granted Lots 3, 4, 5 to the Longshaws who are still in possession of the El Sol property.

Mrs. Boden had Lot 6 surveyed during September, 1955, and she learned that the south 7 feet of the El Sol's operation was part of her Lot 6. She notified the appellants of her discovery and offered to sell the area in question. They refused her offer of sale claiming that they already owned it. In April, 1956, she contracted to sell the south 50 feet of Lot 6 to the Morleys. Then on May, 1956, Mrs. Boden wrote the appellants and demanded that they terminate their trespass of the north 7 feet and make some settlement of the matter.

Mrs. Longshaw testified that the appellants were not billed for, and never paid, the taxes and assessments on the disputed 7 feet. She admitted that in November, 1962, after her husband noticed in the newspaper that the 7 foot strip was being sold for taxes, they purchased it so they would have clear title to it. The property was later redeemed by Mrs. Boden and conveyed to Robert Corbitt for $170 in December, 1962. During the same month appellee Corbitt cut down part of the

oleander hedge on the 7 foot strip. This litigation arose from Corbitt's actions.

To dispose of appellants' several assignments of error we must resolve the following questions:

1. Was there a mutual mistake in regards to the disputed 7 feet, so that the deeds should be reformed?

2. Should testimony be allowed to show the parties' intent?

3. Were Corbitt and his predecessors in interest bona fide purchasers?

4. Were either the Longshaws or Corbitt guilty of laches?

 Where mutual mistake is urged as a ground for reformation, it must be established by evidence that is clear, convincing and satisfactory. Davis v. Kleindienst, 64 Ariz. 251, 169 P.2d 78 (1946). Mutual mistake is shown if there is evidence that the seller intended to sell and the buyer intended to purchase a different piece of land than that described in the deed. McMillon v. Town of Flagstaff, 18 Ariz. 536, 164 P. 318 (1917).

It is important here to analyze two Arizona cases—Berger v. Bhend, 79 Ariz. 173, 285 P.2d 751 (1955) and McNeil v. Attaway, 87 Ariz. 103, 348 P.2d 301 (1960). In *Berger* the plaintiff sued to quiet title. The defendants joined their grantors as third party defendants, demanding reformation. The Arizona Supreme Court reformed the deed from the third party defendant to the defendants, deciding that all the parties mistakenly thought that a private irrigation ditch was the true dividing line between the adjoining tracts when the deeds were executed. The trial court's finding that "there was no expressly agreed boundary line", was not supported by the evidence. The court concluded that there were expressly agreed boundaries between all the parties and that the intent of the parties at the time of conveyance controlled.

In *McNeil*, a quiet title action, the lower court admitted parol evidence which showed the understood boundary of the parties based on a "visual inspection." The Supreme Court reversed the lower court, holding it was error to vary the unambiguous boundary set forth in the deeds. The common grantor had conveyed adjoining lands to two grantees. The court stated that parol evidence may be admitted for the purpose of proving the content of a pre-existing express agreement of the parties to the instrument in a reformation action. The court strongly emphasized that there was no physical feature agreed upon as a boundary line. In *McNeil* the court stated that *Berger* held, where a boundary is actually agreed upon by adjoining landowners and all necessary parties are joined in the suit, the deed may be reformed to conform to the parties' intent.

## INTENTION OF THE PARTIES

Appellants contend that the trial court erred by refusing to allow the admission into evidence of Dr. Geisel's answers by deposition and to written interrogatories concerning questions pertaining to the intentions of his mother, Bernice Geisel, and his sister, Virginia Geisel Adams; and by refusing to allow William Barringer Geisel or Angela Longshaw to testify as to what each thought he or she was receiving. Several times during the trial the court sustained objections to questions concerning the intent of witnesses or testimony by witnesses concerning the intent of another. The trial court ruled that the instrument was not vague or ambiguous and that the parol evidence rule prohibited "going around the instrument."

 Parol evidence is admissible in reformation actions to establish the intention of the parties. See 45 Am.Jur. Reformation of Instrument § 113 and *McNeil,* supra. A witness' direct testimony concerning his intent is admissible and relevant when such intent is in issue. Udall, Arizona Law of Evidence § 113 at 214. A witness, in a position to know, may testify concerning the intention of the parties to an agreement in a reformation action to the same effect as to any other fact which may

have been observed by him. Smith v. Cram, 113 Or. 313, 230 P. 812 (1924); Russell v. Curran, 66 Wyo. 173, 206 P.2d 1159 (1949).[1]

■■■■ Angela Longshaw and William Geisel should have been permitted to testify as to their respective intentions. Dr. Geisel should have been allowed to testify to conduct of the other grantors indicative of their intent which he had observed. The *McNeil* case expressly approves the admission of parol evidence in a reformation action where there is a pre-existing agreement, as there is here.

## MUTUAL MISTAKE

■■■ The record shows that all of the parties agreed that the oleander hedge was the boundary. There is no evidence to the contrary.

The only evidence is that the original grantors (the Geisels) intended to convey the disputed 7 feet to the Longshaws. When Dr. Geisel listed the property, he pointed out the boundaries of the motel to the real estate salesman indicating an iron stake south of the oleanders as the southeast corner of the motel. The real estate salesman testified that he pointed out the boundaries to Mrs. Longshaw as the oleanders on the south and the stake south of the oleanders as the southeast corner of the property (Mrs. Longshaw and her daughter confirmed this testimony). The Longshaws' deposit and receipt agreement refers to improvements, some of which (water heater, coolers and laundry room) are located on the 7 foot strip. If objections had not been sustained to answers to certain interrogatories, Dr. Geisel would have admitted that the original grantors intended to convey all of the El Sol Motel

property to the Longshaws. Mrs. Longshaw testified as follows:

"Q I show you Plaintiffs' Exhibit 12, which is in evidence, and ask you if this is the deed you received for the motel property?

"A I am sure it is.

"Q When you received this deed for the motel property, what was your understanding as to what you were getting?

"MR. HIRSCH: I object. The instrument speaks for itself.

"THE COURT: I think the deed speaks for itself.

\* \* \* \* \* \*

"Q When you made this offer for the purchase of the El Sol Motel, what were you buying?

"A We were buying the El Sol Motel.

"Q Including what?

"A Including the motel, everything, the inventory, the property to the outside of this border of oleanders."

Parts of the deposition of Bernice Geisel were admitted in evidence, some of which follows:

"Q You never intended up until the time you sold the property to the Longshaws to part with any of the El Sol Motel property?

"A No, no, not to the best of my knowledge. Such a thing I think I would remember.

"Q I think you told us that you never intended to part with any part of the El Sol Motel property until the property was turned over to the Longshaws, is that right?

"A No.

1. See Davis v. Kleindienst, 64 Ariz. 251, 169 P.2d 78 (1946), where the court considered a witness' testimony as to the intent of another:

"Inasmuch as both plaintiff and the attorney in fact for the sellers, the Kelleys, testified that plaintiff's orig-

inal purchase covered the ground in controversy, and that the description in the deed was a mistake, and this was uncontradicted, there can be no question that a full compliance was made with the rule. The evidence was clear, convincing and satisfactory."

"Q This is correct?

"A Yes, that's correct, yes.

"Q So, when you did part with the vacant piece of land which was running, which started south of the oleanders on the south side of the El Sol Motel property to the corner, that vacant street which is Flores Street, that is all you intended to part with, is that right?

"A (No audible response.)

"Q And the answer is yes."

The sellers intended (if Dr. Geisel's testimony of his sister's intent is accepted) to sell all of the El Sol Motel and the buyers intended to purchase the land incorporating the El Sol Motel as pointed out by the real estate salesman. The evidence is clear, convincing and satisfactory that the description in the deed was the result of a mutual mistake, since the oleander hedge was considered as the southern boundary of the motel by all parties.

### BONA FIDE PURCHASERS

In Davis v. Kliendeinst, supra, the Arizona Supreme Court indicated the persons as to whom reformation may be had:

" * * * reformation may be had against the original vendor and those in privity with him. * * * It is of course settled that privity exists between two successive holders when the latter takes under the earlier by grant. [citation omitted] It may be said that privity exists where successive relationship or ownership to the same property from a common source appears. [citation omitted] One who is in privity, unless he be a bona fide purchaser for value without notice, takes the property subject to burdens existing against it and, in effect, stands in the shoes of his predecessor in title." 64 Ariz. at 259, 169 P.2d at 83.

■ The deeds from the original grantors to William Barringer Geisel, from him to Mabel Boden, and from her to Robert Corbitt should also be reformed since

privity exists in all these instances for there is successive ownership to the property from a common source. None of the aforementioned are bona fide purchasers, as hereinafter shown. It was stipulated that the conveyance from the Geisels to William Barringer Geisel was without consideration because it was a gift. William Barringer Geisel's testimony indicates that Mabel Boden was not a purchaser without notice. He testified that he did not intend to transfer to her any of the El Sol Motel. He further testified as follows:

"Q I think you told us, I will ask again, and your mother used it continuously until the Longshaws took possession, didn't she?

"A Yes, sir.

"Q And anybody who had driven along there could have seen that strip was used and was part of the El Sol Motel, is that right?

"A Yes, sir.

Furthermore, Mrs. Longshaw testified about a conversation with Mrs. Boden when the appellee Corbitt was present:

"Q Did Mrs. Boden make any statements at that time as to whether or not she claimed any part, claimed any part of the El Sol Motel?

"A No. She said she had never owned any part of the motel.

"Q What did she say when she got a deed from Mr. Geisel, Barringer Geisel, did she say anything as to whether that deed as far as she was concerned meant she was getting any part of the motel?

"A No. It was her understanding all it was is the vacant property south of the motel."

It was stipulated that appellee, Corbitt, knew the physical location of the 7 feet when he purchased it, that the oleander hedge and improvements used in connection with the motel were located thereon. With such notice, he could not be a bona fide purchaser.

## LACHES

Both parties argue that the other is guilty of laches.

"The defense of laches is available against parties seeking reformation * * * but each case is decided on its own facts and circumstances * * * and a mere lapse of time or delay will not constitute laches barring the right to reformation." 76 C.J.S. Reformation of Instruments § 69c at 418.

■ The elements necessary to constitute laches are lack of diligence on the part of one and injury to another due to the lack of diligence. Decker v. Hendricks, 97 Ariz. 36, 396 P.2d 609 (1964).

■ In considering whether the Longshaws were guilty of laches, lack of diligence on their part is not apparent. At all material times they were in possession of the strip in controversy. When the discrepancy between the boundary as described in the deeds and the intended boundary was called to their attention, they continued in possession. It would appear that nothing further was required as an expression of their position.

Dennis v. Northern Pac. Ry. Co., 20 Wash. 320, 55 P. 210 (1898) involves an action to restrain the railroad company from grading and improving property allegedly belonging to plaintiffs because of a conveyance by the railroad to their predecessor in interest. By mistake.a reservation of a strip of land upon which the railroad tracks were laid had been omitted. The railroad company had discovered the mistake prior to the purchase of land by the plaintiffs. The court allowed the railroad company reformation of the conveyance as the purchasers from the railroad's grantee were charged with notice of the railroad's continuous use and possession. The court held that the plaintiff could not complain of laches or the failure of the railroad to commence an action to reform the deed.

■ Likewise, Corbitt had notice of the use and possession of the 7 foot strip as part of the El Sol Motel operations and this notice prevents him from complaining that the Longshaws' failure to take action constituted laches.

The judgment of the superior court is reversed and the cause is remanded to the superior court with directions to enter judgment in favor of the appellants reforming the deeds in accordance with this opinion; quieting title to the north 7 feet of Lot 6 of Block 3 of El Sahuaro Addition, Pima County, Arizona, in the appellants; permanently enjoining the appellee and each of the defendants as to whom the clerk of the superior court has heretofore entered a default from claiming any interest in and to the said property; and for a new trial as to the appellants' claim for damages.

MOLLOY, J., and JACK G. MARKS, Superior Court Judge, concur.

NOTE: Judge HERBERT F. KRUCKER having requested that he be relieved from consideration of this matter, Judge JACK G. MARKS was called to sit in his stead and participate in the determination of this decision.

APPENDIX

Plat Survey of Block 3
El Sahuaro Addition
Pima County, Arizona

Diagram of Chain of Ownership

John and Bernice Geisel and Virginia
Geisel Adams (Owned Lots 3, 4, 5, 6)

William Barringer Geisel
(By deed Jan. 1953, Lot 6)

Mabel Boden
(By deed May 1955, Lot 6)

Longshaws
(By deed July 1955,
Lots 3, 4, 5; El
Sol Motel)

Clifton Morley
(By contract April 1956,
south 50 ft. of Lot 6)

Robert Corbitt
(By deed Dec. 1962,
north 7 ft.)