430 P.2d 713

Lawrence G. CHANTLER and Gertrude E. Chantler, his wife, Appellants,

v.

Allen WOOD and Ardys E. Wood, his wife, Appellees.

No. 1 CA–CIV 424.

Court of Appeals of Arizona.

July 25, 1967.

Rehearing Denied Aug. 9, 1967.

Review Denied Oct. 3, 1967.

Opinion Supplemented Oct. 16, 1967.

See 6 Ariz.App. 325, 432 P.2d 469.

Biaett & Bahde, by Kenneth Biaett, Phoenix, for appellants.

Favour & Quail, by Keith F. Quail & Thelton D. Beck, Prescott, for appellees.

DONOFRIO, Judge.

This is an appeal by Lawrence G. Chantler and wife, who are one of two sets of defendants below, the other being Leonard F. Geiler and wife, from a judgment and decree in favor of plaintiffs, Allen Wood and wife, reforming a deed executed by the Geilers to the Woods and quieting title in Woods to certain realty in Yavapai County, and also from a judgment entered at the same time in favor of the Woods and against the Chantlers for attorney's fees. Hereafter we will at times refer to the parties by their surnames.

The question involved is whether the trial court had the power to reform a deed and quiet title to a certain strip of land, and whether it properly awarded attorney's fees in the action.

■ Since on this appeal the evidence must be taken in the strongest light to support the judgment, we set forth briefly the following facts which are supported by the record:

The Geilers owned five adjoining lots of a subdivision in the City of Prescott. On this property were two groups of apartments. The groups were on opposite ends of the property with a space in between which was planted with grass and trees. To place them in their order from the north end, they are the Paramount and the Paramount Annex apartments forming one group; next, the space in between which we will hereafter call the courtyard; and then the Chesterfield Apartments forming the other group. The Geilers had the entire property up for sale, but answering an inquiry from a real estate firm, decided to sell the Chesterfield apartments separately. The interested prospects, Chantlers, inspected the Chesterfield apartments and agreed to buy them. The north boundary of the Chesterfield property was described as the north boundary of the Chesterfield building itself. A contract was prepared which the parties executed that erroneously recited the lots on which the Paramount group of apartments was located. Before discovery of the error, and the day after

the contract was signed, Chantler inspected the property and discovered that since the building was on the lot line he needed an easement for access to his basement. The easement was then provided for by the sellers. Thereafter the Geilers sold the Paramount apartment group to the Woods.

In connection with these two sales several different descriptions of the properties were attempted by the individuals drawing the instruments, apparently none of which were correct, to convey the properties as intended. The disputed property was included in a deed to the Chantlers dated March 31, 1961. It was not until several months later that Woods learned the description omitted the courtyard and that what he obtained had not conformed to what was the mutual intent between themselves and the Geilers. The courtyard was included by mistake in a deed to the Chantlers. Woods then employed counsel, other than the one originally preparing the deeds, who prepared a quitclaim deed describing the courtyard which they stated they purchased and which the Geilers had intended they should receive. This deed, along with a check in the amount of $5.00, was tendered to the Chantlers pursuant to A.R.S. § 12–1103, and was refused by them.

The Woods thereafter filed this action against the two sets of defendants for reformation of their deed to include the courtyard as described in the quitclaim deed, and also to quiet title to the same property. The principal basis of the action for reformation was that by the mutual mistake of the Geilers and both sets of grantees, the deeds did not correctly describe the properties which the Geilers intended to convey to each of the sets of grantees. The Geilers admitted practically all of the allegations of the complaint and consented to the reformation of their deed as requested by the Woods.

At the trial, in addition to the evidence regarding the property transactions, proof was made that plaintiffs' counsel expended 158¾ hours in handling the litigation.

[1] This did not include the final day of trial and the time spent thereafter.

The area in dispute, which is the property described in the judgment, is the same area described in the quitclaim deed and forms the northerly portion of the lot on which the courtyard is located, namely, the north 34.14 feet of Lot 10 of the subdivision involved.

One of the essential issues raised is whether the Court erred in reforming the deed from the Geilers to the Woods. It is appellants' contention that since the deed (recorded July 14, 1961) from the Geilers to the Chantlers for the same area was prior to the reformation by the Court of the deed (recorded Oct. 10, 1961) from the Geilers to the Woods, the decree of the Court is ineffective to convey title to the premises. They urge the Woods may have a good case against the Geilers for damages for breach of warranty, but they have no title to the area in dispute.

In support of their contention, appellants cite the general authority that as between the parties the reformation of an instrument relates back to the time of the original execution of such instrument and would therefore not affect the prior deed which placed title in the Chantlers, and that as to the quiet title action, the plaintiffs cannot prevail unless they show title in themselves which it is claimed they cannot do, citing, among others, the case of Saxman v. Christmann, 52 Ariz. 149, 79 P.2d 520 (1938). They sum up their contention by urging that the plaintiffs in a quiet title action may not divest the title of another and acquire it solely upon the basis of parol evidence.

Our first question is whether, when the deed from Geilers to Chantlers covering the courtyard went of record, it divested the grantors of title irrespective of the mistaken description, to the extent that the subsequent deed by the Geilers to the Woods cannot be reformed to include the courtyard.

We would hold, in keeping with what we believe to be the better reasoned authorities, that the Court did not err in granting reformation.

The recording of an instrument involving land does not always irrevocably transfer the rights in the land embraced by the instrument, and particularly so as against an innocent third party when the grantee would be conscious of the error committed. Recording a deed gives constructive notice to persons who might otherwise have acquired the position of bona fide purchasers, A.R.S. §§ 33–411, subsec. A, 33–412 and 33–416, County of Pinal v. Pomeroy, 60 Ariz. 448 at 455, 139 P.2d 451 (1943), however the facts of this case do not involve this principle of estoppel.

The purpose of the recording statute is to create notice in the form of constructive notice so that a party or his transferee may not claim to be a subsequent purchaser for value without notice. As a result, one subsequent in time cannot be in a position to cut off prior equities by estoppel. However, the act of recording does not create an estoppel for the recorder against the holders of conflicting rights and equities and their transferees. Instead, recording prevents an estoppel from being asserted against the recorder by one who is a subsequent purchaser for value without actual notice.

All parties to this action have notice, either constructive or actual, therefore the one who prevails must do so on the strength of his own claim to title of the disputed land.

We are unable to find any Arizona cases on point, but Valley Products v. Kubelsky, 49 Ariz. 500, 68 P.2d 69 (1937) is helpful. This case, which deals with leases, establishes that ordinary rules of estoppel apply in determining the effect of the constructive notice achieved by recordation. The opinion recites that insofar as the equities between a lessor and its lessee were concerned, "the recorded lease in no sense was an estoppel, but either party was at liberty to show, in the proper manner, the true nature of the terms under which the

property was farmed." 49 Ariz. at 508, 68 P.2d at 73. Applying this reasoning to the instant case, we would say that insofar as the equities between grantor and grantee are concerned, the recorded deed is in no sense an estoppel, but either party was at liberty in a proper action to show the true description that was intended between grantor and grantee. Reformation is the proper action to correct an erroneous description arising from mutual mistake.

██ It is a fundamental principle that equity will not suffer a wrong without a remedy. Grand Intern. Broth of Locomotive Engrs. v. Mills, 43 Ariz. 379, 31 P.2d 971 (1934). If there is a mutual mistake that the seller intended to sell and the buyer intended to purchase a different piece of land than that described in the deed, it forms a basis for an action in reformation, Longshaw v. Corbitt, 4 Ariz.App. 408, 420 P.2d 980 (1966), and we believe it to be proper in the instant case where the common grantors and the grantees are before the Court. Daniel v. Middleton, 132 Ky. 172, 116 S.W. 721 (1909).

██ We next must determine the question of lack of privity raised by appellants. They argue that upon delivery of the erroneous Geiler-Chantler conveyance the Geilers were divested of title and retained only a chose in action against the Chantlers, with no rights in the Woods to the realty as against the Chantlers. However, when the question is one of reformation, privity exists where successive relationship or ownership from a common source appears and therefore one stands in the shoes of his predecessor. Davis v. Kleindienst, 64 Ariz. 251, 259, 169 P.2d 78 (1946); Home Owners' L. Corp. v. Bank of Arizona, 54 Ariz. 146, 94 P.2d 437 (1939); 45 Am.Jur. Reformation of Instruments § 64. Such rights as the Geilers may have had against the Chantlers to clear title were transferred to the Woods by the Geiler-Wood agreement and thereby became the thread of privity to serve as the basis for equitable relief against the Chantlers.

██ We turn now to the contention of appellants that the plaintiffs improperly joined the two causes of action and cannot recover in the quiet title feature of this action in that they could not successfully prove title in themselves.

██ We believe the two actions are properly brought and that plaintiffs may successfully prove title in themselves. A reading of the cases interpreting our action to quiet title, statute A.R.S. § 12–1101, and of similar statutes in other jurisdictions, reveals that the action is one of equitable cognizance and that every interest in the title to real property, whether legal or equitable, may be determined in the action. City of Phoenix v. Hughes, 36 Ariz. 399, 286 P. 191 (1930); Saxman v. Christmann, supra; Lewiston Lime Co. v. Barney, 87 Idaho 462, 394 P.2d 323 (1964).

The instant case is distinguishable from Saxman in that unlike Saxman both parties here are claiming title through a common grantor which is governed by an exception to the general rule. This exception is succinctly stated in 74 C.J.S. Quieting Title § 19, as follows:

"The rule that plaintiff must recover on the strength of his own title, as discussed supra § 17 b, is inapplicable where the parties trace their respective titles to a common source. In such a case, the only question is who has the better title from the common source, and plaintiff need not show a title good as against the whole world, but only as against defendant, and the one who has the superior title or equity must prevail."

This was reiterated in Harrell v. Nichols, 86 Okl. 115, 206 P. 817 (1922), wherein the Court said:

" * * * that in a suit to quiet title the plaintiff must recover on the strength of his own title rather than the weakness of his adversary's; but there is a well-recognized exception to this rule, and that is, where both parties trace their title to a common source, the one must prevail who has the superior equity."

See also Collins v. Heitman, 225 Ark. 666, 284 S.W.2d 628 (1955).

By prevailing in the suit for reformation the Woods will have proved title as derived from the common grantors-Geilers to themselves.

 Appellants' other contention that in the quiet title action plaintiffs may not divest them of title solely upon the basis of parol evidence is answered by the fact that the parol evidence rule does not apply to a situation where there was a prior agreement and by reason of mutual mistake of fact, instruments have been so framed as not to express the true agreement of the parties. Such evidence is admissible for the purpose of proving the content of the pre-existing express agreement of the parties to the instrument. Berger v. Bhend, 79 Ariz. 173, 285 P.2d 751 (1955); McNeil v. Attaway, 87 Ariz. 103, 348 P.2d 301 (1960); Hollars v. Stephenson, 121 Ind.App. 410, 99 N.E.2d 258 (1951).

We have studied the several cases involving boundary disputes to determine the rule applicable to this action. We would hold that this case should be governed by the rule set out in Berger and supported by other cases that where there are expressly agreed boundaries between all the parties, the intent of the parties at the time of conveyance controlled. Longshaw v. Corbitt, 4 Ariz.App. 408, 420 P.2d 980 (1966).

We have searched the record to see if this required evidence was before the Court and have found ample testimony upon which the Court could base its judgment. Mr. Wood's testimony was to the effect that when he went out to inspect the property before buying, he had discussions with Dr. Geiler in the courtyard about the boundary lines of the area; that Dr. Geiler explained to him that everything in the courtyard area was part of the Paramount properties except a four-foot easement to be given the Chesterfield so they could get into their basement. Dr. Geiler testified with reference to the sale of the Ches-

terfield apartments to the Chantlers that he had conversations with Mr. Chantler on the property outside the apartments and explained that the north boundary of the property he intended to sell him would be the north boundary of the Chesterfield Apartment building.

Finally, we turn to the question regarding attorney's fees. Under A.R.S. § 12-1103, subsec. B plaintiffs were entitled to reasonable attorney's fees for the time spent on the quiet title feature of the case. Evidence was introduced showing 158¾ hours spent up to that time by the law firm representing plaintiffs and that the reasonable normal charge for such work was $25 per hour; also that $250 per day was a reasonable charge for trial work. The trial consumed three days. As against this proof of about $4000 attorney's fees, the Court awarded $2500. Although reformation and quiet title were both involved, we find no abuse of discretion by the Court in the amount that it allowed.

Affirmed.

CAMERON, C. J., and STEVENS, J., concur.