504 P.2d 552

**CITY OF SCOTTSDALE, a municipal corporation, Appellant,**

**v.**

**Jewel Nigh BURKE, (formerly Jewel Nigh, a divorced woman), Appellee.**

**No. 1 CA–CIV 1825.**

Court of Appeals of Arizona,
Division 1,
Department A.

Dec. 28, 1972.

Rehearing Denied Jan. 31, 1973.

Review Denied March 13, 1973.

———◆———

Richard Filler, Scottsdale City Atty., by Ralph L. Fenderson, Jr., Asst. City Atty., Scottsdale, for appellant.

Evans, Kitchel & Jenckes, P. C. by David Wm. West, Phoenix, for appellee.

DONOFRIO, Judge.

This is an appeal from a judgment entered by the Superior Court of Maricopa County on July 22, 1971 in favor of Mrs. Jewel Nigh Burke (Burke), defendant in the Superior Court, and against the City of Scottsdale (City, Scottsdale), plaintiff in the Superior Court, quieting title to a strip of land (0.117 acre) in the appellee-defendant Burke.

The lawsuit revolves around a sliver of land in the City of Tempe on which the City of Scottsdale has certain chlorine or sewer lines. The sliver resulted when the land in which Scottsdale became interested because of sewer pond difficulties was described in one instance from one reference point, and in another instance from a different reference point. The land (part of SW ¼, SE ¼ Sec. 11, TIN, R4E) was in a short section, and when originally described it was from an erroneous reference point that did not take into consideration the short section measurements. Later, when described from a correct reference point, the sliver resulted. A proper survey from the true section reference point of

the half of a quarter section would show a measurement of 1267.50 feet for the short section. A regular half of a quarter section is 1320 feet. The difference in measurements created the sliver of land.

We are called upon to determine whether a quitclaim deed dated December 6, 1966, executed by the City of Scottsdale to appellee Burke which included and passed title to this sliver of land upon which the City has chlorine and sewer lines should be reformed or partially cancelled so as to place title of that land back into the City.

The facts in the light most favorable toward supporting the judgment of the trial court can be briefly stated as follows. Burke acquired a plot of land (18 acres) near Princess Road in Tempe in 1958. The City of Scottsdale started to build sewer ponds nearby which contaminated a well on Burke's property. This and other nuisances prompted Burke to file a suit for damages against the City. The City then in 1961 wished to purchase the property to avoid further litigation of that lawsuit. Thereafter in the early part of 1961 Burke engaged in considerable negotiations with certain officials of the City regarding the sale of the property and termination of her difficulties with them. This ended up in an agreement. In this agreement the City purchased the property by paying $10,000 down, with the balance of the purchase price to be paid in certain stated payments. The matter was handled through a title company. The City paid the initial $10,000 payment and then defaulted in making the first payment when it became due. After some unsuccessful negotiations with the City to collect on the agreement Burke filed a foreclosure action (Maricopa County Suit No. C–129525). In that action the City counterclaimed for the $10,000 down payment it had made on the property. The validity of the sale was attacked on the grounds that the City Council had never authorized the purchase. From then up until 1966 there was a long series of negotiations with the City to settle the lawsuit. The three-bedroom house which had been on the property was no longer habitable.

Considerable debris was on the property, and the barn, well, storage tank and fences which had been on the property had either been removed or rendered useless. Burke admitted she wasn't aware when these negotiations first started that there was a property line dispute and that there were encroachments on the sliver until she was served with papers of a condemnation proceedings by the City of Phoenix. These proceedings antedated the settlement which was later agreed upon. In that settlement of this dispute Scottsdale agreed to forfeit the sum it had paid down and made a quitclaim deed to Burke of the property. The City Council on December 6, 1966 passed upon and authorized this conveyance. This deed was executed on December 6, 1966 and included the sliver of land. The City Attorney representing the City testified that he thought the City was quitclaiming only the interest which Burke had previously given to the City. Burke's evidence was to the effect that there was more than that involved, and that she intended to receive all that the deed described.

The evidence shows that certain measurements in maps regarding sewer construction in the area would alert one that a short section was involved. The evidence further shows that the City did not have a survey made at the time of the execution of the quitclaim deed. The survey was made the following year when Burke began demanding that the City move the encroachments off her property. These encroachments were the chlorine lines which were put on the property about two months before the deed of December 6, 1966. The deed was not recorded until April 28, 1967 after a certain assessment had been paid and other things done which the City had agreed to do. The chain of title reflected by the various conveyances up to the time of the quitclaim deed showing ownership of the property from a common source is a part of the record.

At this point a summary of each party's version of the case is helpful. It is the City's contention that although it did con-

vey the sliver by the description in the deed, it did not intend to do so. It contends that it did not intend to include any land then owned by the City under prior title and upon which the City had established a chlorine line. On this basis it seeks to have reformation of the deed because of mistake. Burke, on the other hand, contends that there had been a dispute as to who owned the property involved and that the City by the quitclaim deed forever released all right to said strip of property in the settlement that was made between them; that it was Burke's intention to receive all that was described by the deed, and therefore the title to the sliver should be quieted in her.

In Chantler v. Wood, 6 Ariz.App. 134, 430 P.2d 713 (1967), this Court quoted with approval 74 C.J.S. Quieting Title § 19, as follows:

" 'The rule that plaintiff must recover on the strength of his own title . . . is inapplicable where the parties trace their respective titles to a common source. In such a case, the only question is who has the better title from the common source, and plaintiff need not show a title good as against the whole world, but only as against defendant, and the one who has the superior title or equity must prevail.' "
6 Ariz.App. at 138, 430 P.2d at 717.

The thrust of the City's main argument is that under this rule announced in Chantler the title to the sliver should be quieted in the City because the evidence all shows that the land in question was first deeded to the predecessors in interest of the City and later the same grantor deeded Burke's predecessor in interest another piece of property in the same quarter section. The City contends that this deed included the sliver of land in question which had formerly been deeded to the City's predecessor in interest. It also argues that prior to the date of the quitclaim deed Burke never had any title to the strip in question, and now seeks to lay claim to the strip by the quitclaim deed which was prepared by mistake by its City Attorney who intended to convey back to Burke only what Burke had

conveyed originally to the City, and that therefore Burke does not legally hold title to the strip.

With reference to this argument Burke, on the other hand, contends that the rule hereinabove quoted from Chantler v. Wood, supra, does not apply to the instant situation; that it clearly applies only "where the parties trace their respective titles to a common source"; and that here Burke has a quitclaim deed from the City which was intended to include the disputed sliver and is urging that the Court recognize this deed as its claim to ownership in the subject property without reference to the hereinabove quoted rule in Chantler.

The law is well settled that courts of equity have jurisdiction to relieve parties against the consequences of mutual mistake of fact and to grant reformation in case of such a mistake. 45 Am.Jur., Reformation of Instruments § 55.

To entitle the City to a reformation of the deed because of a mutual mistake, the mistake must be established by "clear, convincing and satisfactory evidence that a definite intention on which the minds of the parties had met preexisted the written instrument and that the mistake occurred in its execution." Hackin v. Pioneer Plumbing Supply Co., 10 Ariz.App. 150, 457 P.2d 312, 320 (1969). See also Longshaw v. Corbitt, 4 Ariz.App. 408, 420 P.2d 980 (1966). This rule has been stated by our Supreme Court on several previous occasions. Davis v. Kleindienst, 64 Ariz. 251, 169 P.2d 78 (1946); Gingery v. Romeris, 24 Ariz. 267, 208 P. 1024 (1922); Northwestern Nat. Inc. Co. v. Chambers, 24 Ariz. 86, 206 P. 1081 (1922). This the trial court did not find because in its judgment it quieted title in favor of Burke. We believe this failure of the City to meet its burden of proof is fully substantiated by the record.

In addition to other evidence on the subject, the engineer (Morris) hired by the City testified with reference to a Brown survey made by Burke in February which antedated the quitclaim deed. This

 

testimony showed measurements which would alert one to an incorrect description in that the area of the boundary dispute was in a short section. Burke's evidence was to the effect that she was aware of a property line dispute at the time of the agreement. Under this and the other evidence we have no difficulty in finding support for the conclusion that there was no clear showing of mutual mistake.

■ In order to reform an instrument by the unilateral mistake of one party, there must be a showing of fraud or inequitable conduct on the part of the other party. Korrick v. Tuller, 42 Ariz. 493, 27 P.2d 529 (1933); Lane v. Mathews, 75 Ariz. 1, 251 P.2d 303 (1953).

■ The City's alternative argument is that Burke, knowing of the situation, is guilty of inequitable conduct in seeking to take advantage of the City's mistake by acquiring more property than she conveyed to it in 1961. This they base on the rule of law in Korrick, supra, that a deed may be reformed upon proof of plaintiff's unilateral mistake and defendant's inequitable conduct.

To this Burke answers that the evidence supports a lack of any inequitable conduct requisite to the unilateral mistake rule, and that there is no showing of any material nondisclosure by Burke. She attempted to advise the City but it was ignored. In this regard the testimony of the City Attorney and Burke is pertinent. Burke maintained:

"Q [by her attorney] You have stated that you were aware—had a continuing awareness of the property boundary dispute?

"A [by appellee] Yes.

"Q You made the City aware of this?

"A I did."

The City Attorney agreed:

"Q [by her attorney] Did you testify that Mrs. Burke did make you aware at that time as to a property line dispute?

"A [by City Attorney] Yes.

"Q What did you do or cause to have done as a result of her so advising you?

"A I—you know, it wasn't anything new, I heard this before."

Regarding the equities, we can add that it does not seem fair that the City waited to make the survey until after Burke agreed to the settlement and received the deed. The effect of the delay was that Burke had to incur further legal expenses and inconveniences related to the original contamination suit which she brought because the City had built sewer ponds which contaminated the well on her property. There was also considerable activity concerning the sewer improvements and various descriptions in maps to alert the City to a survey. The equities in this case favor the appellee. Even though we do not so hold, the effect of the time delay discussed above is characteristic of a party guilty of laches.

The record supports the judgment and decree quieting title rendered by the trial court.

Affirmed.

STEVENS, P. J., and CASE, J., concur.