623 P.2d 11

**G. Eugene ISAAK, as Personal Representative of Jean-Yves Delorieux, Appellant,**

v.

**MASSACHUSETTS INDEMNITY LIFE INSURANCE COMPANY, a corporation, Appellee.**

**No. 15028.**

Supreme Court of Arizona, En Banc.

Jan. 7, 1981.

Miller, Pitt & Feldman by Stanley G. Feldman and John L. Tully, Tucson, for appellant.

Lesher, Kimble & Rucker by William Kimble, Tucson, for appellee.

HAYS, Justice.

This appeal stems from an action for breach of contract brought in the Pima County Superior Court. Trial was held to the court and findings of fact and conclusions of law were entered. Taking jurisdiction pursuant to 17A A.R.S., Rules of Civil Appellate Procedure, rule 19(e), we affirm the judgment of the trial court.

At the outset we note that unless clearly erroneous, findings of fact will not be disturbed on appeal. *United Bank v. Mesa N. O. Nelson Co.*, 121 Ariz. 438, 590 P.2d 1384 (1979); 16 A.R.S., Rules of Civil Procedure, Rule 52(a). Since we feel the record supports the factual determinations made by the trial court, they will not be set aside here.

The findings of fact entered below reveal that on November 9, 1976, Michael Pulitzer received a telephone call at his Tucson home from Christine Biddle of New York. Mrs. Biddle told Mr. Pulitzer she would be flying into Tucson late that night and she would be accompanied by Jean-Yves Delorieux. Biddle requested that Pulitzer make arrangements to have a rental car available so that she and Delorieux could travel to the Biddle ranch near Arivaca, Arizona. Pulitzer knew that Biddle was not licensed to drive and he was informed that the rental car would be driven by Delorieux. Pulitzer agreed to make arrangements for a rental car and told Biddle he would leave the keys at an airline ticket counter at the Tucson airport.

Pulitzer, without identifying himself, called the Hertz car rental counter at the Tucson airport and explained that he had friends arriving from New York and that he wanted to rent a car for them. Learning that the Hertz counter would not be open at 2:00 A.M., Pulitzer called the other car rental agencies at the Tucson airport and found that none would be open then either.

Pulitzer called Hertz back. Again not identifying himself, Pulitzer asked how he could go about renting a car for his friends to use. He was informed that it would be

necessary to go to the Hertz desk at the airport, show his driver's license and Hertz credit card, then fill out the appropriate forms and sign the necessary papers.

Pulitzer went to the Hertz counter at the Tucson airport. He told the Hertz representative he wanted to rent a car but never told the rental agent he intended to rent the car for his friends' use.

The Hertz representative asked Pulitzer a number of questions and, based upon his responses, filled out the rental agreement. The questions included whether Pulitzer wanted personal accident insurance, which he accepted by placing his initials in a specific box on the rental agreement. Pulitzer signed the rental agreement, which the representative placed in an envelope along with the keys to the car. Pulitzer left the envelope with a porter at the airport and went home.

When Biddle and Delorieux arrived in Tucson late that night, the porter gave them the envelope. On November 13, 1976, while driving the rental car, Delorieux was killed in a single-car accident.

This action was brought by the personal representative of the estate of Jean-Yves Delorieux to recover $50,000 payable under the personal accident insurance policy. Payment was refused because Delorieux was neither an authorized driver under the contract nor was he the individual covered under the personal accident insurance policy.

Appellant argues that since Hertz' method of doing business discourages customers from reading the rental agreement, Hertz is estopped from relying on the express terms of the contract to deny insurance coverage to Delorieux; that the contract should be reformed to reflect Pulitzer's intent to rent the car for Delorieux and to cover him by the personal accident insurance; that by accepting the insurance premiums after the accident with the knowledge that Delorieux was the driver, the insurance company is estopped from denying coverage; and final-ly appellant argues a constructive trust should be placed on the proceeds of the insurance in favor of Delorieux.

Appellant's argument in support of all these contentions is basically the same: Hertz, by virtue of its advertising, method of doing business, and its training of rental agents, encourages a quick rental transaction. The transaction is accomplished in such a manner that it would be inconvenient, if not impossible, for a given customer to read and understand the agreement he has made. Appellant argues that Hertz must bear the responsibility when the transaction goes awry.

At the outset we note that this is an action for breach of contract. As such, we are not really concerned with who was at fault. We are not concerned with what might have happened or what could have happened; we must look to what actually did happen.

And what did happen is Pulitzer approached the Hertz car rental desk and asked to rent a car. He gave no indication whatsoever that he was renting the car for another's use. That he called earlier and said the car was to be rented for friends is of no moment because he never identified himself when calling. Pulitzer cannot be said to have given Hertz effective notice of his intention to rent a car for someone else. Having no reason to suspect that Pulitzer did not intend to rent the car for his own use, the car rental agent never asked. Was it any more incumbent on Hertz to ask whether anyone else would be driving the car than it was for Pulitzer to assert his principle intent in entering into the contract? Was it any more incumbent upon Hertz to direct Pulitzer to read the contract than it was for Pulitzer to take it upon himself to read at the very least that portion of the agreement directly preceding his signature? *

■ We do not answer these questions because we must hold that appellant is

---

\* Within the two inches immediately above Pulitzer's signature was a space designated "ADDITIONAL AUTHORIZED OPERATORS" and the language "Customer agrees not to permit use of Vehicle by any other person without obtaining Lessor's prior written consent."

bound by the manifestations of Pulitzer's intent as indicated by the rental agreement. A valid contract must be given full force and effect even if its enforcement is harsh. *Goodman v. Newzona Investment Co.,* 101 Ariz. 470, 421 P.2d 318 (1966).

 It may well be that the evolution of fundamental, common-law principles of contract did not encompass contemporary fill-in-the-blanks contracts incorporating many pages of terms and conditions and several documents; nevertheless, no matter what form a written contract takes, it is not the undisclosed intent of parties to a contract with which we are concerned, but the outward manifestations of their assent. A clear and unambiguous contract must be interpreted according to its terms. *Goodman v. Newzona Investment Co., supra.* Unless there is fraud, misrepresentation or mistake, those manifestations of assent are to be gleaned from within the four corners of the contract, not from parol evidence. *Standage Ventures, Inc. v. State,* 114 Ariz. 480, 562 P.2d 360 (1977); *Brand v. Elledge,* 101 Ariz. 352, 419 P.2d 531 (1966); *LeBaron v. Crismon,* 100 Ariz. 206, 412 P.2d 705 (1966).

In *Bradley v. Industrial Commission,* 51 Ariz. 291, 295, 76 P.2d 745, 746 (1938), we said:

> It is universally held that, when the parties to a contract have reduced it to writing, one of them may not defeat it by showing by parol evidence that he did not understand what the contract meant, except on the ground of mutual mistake, fraud, or misrepresentation, and the modern doctrine is that the rule, strictly speaking, is one of substantive law rather than of evidence.

*See Heywood v. Ziol,* 91 Ariz. 309, 372 P.2d 200 (1962); *McMillon v. Town of Flagstaff,* 18 Ariz. 536, 164 P. 318 (1917).

 Appellant here seeks reformation of the agreement between Hertz and Pulitzer to reflect the latter's intent to rent the car for Delorieux's use and to cover him with the personal accident insurance. Even if this court were to allow parol evidence of Pulitzer's intent to show mistake, *see*

*McNeil v. Attaway,* 87 Ariz. 103, 348 P.2d 301 (1959), the mistake here at best would be unilateral. There is no fact upon which the parties were agreed but upon which they were mutually mistaken. *City of Scottsdale v. Burke,* 19 Ariz.App. 11, 504 P.2d 552 (1972). The mistake as to who could drive the car and as to who would be covered by the personal accident insurance was peculiar to Pulitzer. In the absence of mutual mistake, to reform an instrument because of the unilateral mistake of one party, there must be fraud or inequitable conduct by the other party. *Korrick v. Tuller,* 42 Ariz. 493, 27 P.2d 529 (1933); *City of Scottsdale v. Burke, supra.* Inequitable conduct which would justify reformation when there is unilateral mistake takes the form of knowledge on the part of one party of the other's mistake. *Korrick v. Tuller, supra.* If Hertz had known the car was to be driven by Delorieux and had failed to incorporate that fact in the agreement, then reformation would be in order. Reformation is the remedy designed to correct a written instrument which fails to express the terms agreed upon by the parties; it is not intended to enforce the terms of an agreement the parties never made. *A & A Sign Co. v. Maughan,* 419 F.2d 1152 (9th Cir. 1969).

 Not only does the rental agreement fail to identify Delorieux as the customer or authorized driver, but that part of the agreement which incorporates the contract for personal accident insurance fails to include him; the contract of insurance by its terms covers Michael Pulitzer, the customer signing the rental agreement. A contract for insurance, like any other contract, requires basic contract elements which, among others, includes mutuality of agreement. *Roscoe v. Bankers Life Insurance Co. of Nebraska,* 22 Ariz.App. 282, 526 P.2d 1080 (1974). It is not within the power of this court to "revise, modify, alter, extend, or remake" a contract to include terms not agreed upon by the parties. *Goodman v. Newzona Investment Co., supra; Shattuck v. Precision-Toyota, Inc.,* 115 Ariz. 586, 566 P.2d 1332 (1977). By initial-

ing the box for personal accident insurance on the rental agreement, Michael Pulitzer purchased personal accident insurance for the term of the rental agreement. If Michael Pulitzer was mistaken as to whom the insurance covered, the remedy for unilateral mistake, under the proper circumstances, is rescission, not reformation. *Lehnardt v. City of Phoenix*, 105 Ariz. 142, 460 P.2d 637 (1969); *Hubbs v. Costello*, 22 Ariz.App. 498, 528 P.2d 1257 (1974).

Appellant argues that because the insurance company accepted premiums knowing the details of the accident, it is estopped from denying Delorieux coverage. Since the express terms of the contract reveal that Pulitzer was the customer covered by the personal accident insurance during the course of the rental agreement, the premiums were earned. Since there is no indication of any agreement to cover Delorieux, payment of the policy proceeds was properly refused.

Appellant has been unable to establish that he has any right to collect the proceeds of the personal accident insurance policy; therefore, it cannot be said that the insurance company is holding something that in equity and good conscience belongs to him. The constructive trust remedy is unavailable. *Barrasso v. First National Bank*, 122 Ariz. 469, 595 P.2d 1014 (App.1979).

The judgment of the trial court is affirmed.

STRUCKMEYER, C. J., HOLOHAN, V. C. J., and CAMERON and GORDON, JJ., concur.