323 P.2d 296

Paula HASSENPFLUG, Appellant,

v.

David L. JONES and Helen G. Jones, husband and wife, Appellees.

No. 6537.

Supreme Court of Arizona.

March 26, 1958.

John A. Metheany, Phoenix, for appellant.

Shute & Elsing, Phoenix, for appellees.

UDALL, Chief Justice.

The action below was based on two claims for relief. The first on assumpsit and the second for damages resulting from fraud in the transaction. The trial court, sitting without a jury, made findings of fact and conclusions of law sustaining plaintiffs on both theories. This appeal by defendant, Paula Hassenpflug, from the money judgment for $12,360 together with interest and costs entered against her and in favor of plaintiffs (appellees) David L. Jones and Helen G. Jones, husband and wife, followed. The parties will be referred to herein either by their names or as plaintiffs and defendant. A supersedeas bond was given to stay execution.

Inasmuch as the assignments of error attack the findings of fact and conclusions of law the same are herein set forth.

"Findings of Fact
"I

"That plaintiffs and defendant are residents of Maricopa County, Arizona. The defendant is a real estate broker licensed under the laws of Arizona.

"II

"On January 1, 1955 the plaintiffs were the owners of two promissory notes, one in the sum of $4,000 and the other in the sum of $6,000. These notes were secured by real estate mortgages.

"III

"The plaintiffs assigned the notes and mortgages to the plaintiff [sic defendant] for the purpose of having her, as their agent, collect the sums owing on the notes. That without accounting for the notes and mortgages, she converted them on January 1, 1955 to her own use, and has given the plaintiffs no consideration for them.

"IV

"Over a period of time the plaintiffs loaned the defendant $3,500. Prior to March 15, 1955 the defendant repaid

$2,500. On March 15, 1955 she owed the plaintiffs $1,000 on account of said loans, none of which has been repaid.

"V

"That pursuant to a scheme to convert the said notes and mortgages, and to conceal such action from the plaintiffs, the defendant induced the plaintiffs to enter into a contract to purchase property from one Fletcher. That said Fletcher was, in fact, the defendant; that the defendant at the time of the negotiations was purporting to purchase the property (Canary Court) under the name of Fletcher for a sum which was substantially less than the price for which it was to be sold to the plaintiffs, thus attempting to make a secret profit to offset the amount of said notes. That these facts were not disclosed to the plaintiffs.

"The defendant knew that her representations to the plaintiffs were false and that they were relied upon and acted upon by the plaintiffs. The plaintiffs did not know that the representations were false and they had a right to rely on them.

"VI

"That the material allegations of plaintiffs' First Amended Complaint are true.

"VII

"That by virtue of the facts proven under the plaintiffs' First Claim for Relief, the plaintiffs were damaged in the sum of $11,000. By virtue of the facts proven under the Plaintiffs' Second Claim for Relief, the plaintiffs were damaged in the sum of $10,000.

"Conclusions of Law

"I

"The plaintiffs are entitled to a judgment both on the theory of an implied assumpsit and on the theory of fraud. The recovery of the ten thousand dollars prayed for in each claim for relief can only be had once, whether on the theory of assumpsit or fraud. Under the first claim for relief the plaintiffs are entitled to recover an additional one thousand dollars, making a total sum of eleven thousand dollars.

"II

"Plaintiffs are entitled to judgment against the defendant in the sum of $11,000 with interest at the rate of six per cent per annum on $10,000 from January 1, 1955 until paid; and interest at the rate of six per cent per annum on $1,000 from March 1, 1955 until paid; and for costs.

"Let Judgment be entered accordingly.

"(Parenthetical expressions supplied.)

" * * * * * * *."

Defendant's first assignment of error attacks, in its entirety, findings of fact III

and VI and that portion of VII, supra, relating to $11,000 damage assessed under the first claim for relief. It further attacks the conclusions of law upon the grounds that the plaintiffs' rights based on assumpsit were satisfied and extinguished by their embodiment in the contract for sale (see finding of fact V) and this action could not properly be maintained until said contract was rescinded. Defendant cites no authority in support of her position.

Plaintiffs advance the following law as being applicable:

"*Implied assumpsit* is an undertaking presumed in law to have been made by a party, from his conduct, although he has not made any express promise.

"The law presumes such an undertaking to have been made, on the ground that everybody is supposed to have undertaken to do what is, in point of law, just and right." Bouvier's Law Dictionary, Third Revision.

See also, Ruse v. Williams, 14 Ariz. 445, 130 P. 887, 45 L.R.A.,N.S., 92.

Plaintiffs maintain that the only real question presented on this appeal is whether there was substantial evidence to support the findings of fact, supra, and the judgment based thereon.

■ The facts, stated in a light most favorable to a sustaining of the judgment, disclose an amazing story of defendant's manipulations and studied deception in practicing an outright fraud upon the naive and unsuspecting plaintiffs. Plaintiff, David L. Jones, was a retired minister; his life's savings, amounting to approximately $15,000 was in cash and at the time of his first meeting with defendant he and his wife were looking for a safe investment that would return a fair profit. Defendant was a licensed broker and during most of their association was acting as the agent of plaintiffs, either in buying or selling property for them. Undoubtedly a fiduciary relationship existed between them. It is well settled that a broker owes the utmost good faith to his principal. Christensen v. Pryor, 75 Ariz. 260, 255 P.2d 195; Haymes v. Rogers, 70 Ariz. 408, 222 P.2d 789, 17 A.L.R.2d 896. The machinations of defendant in getting into her hands all of plaintiffs' moneys, eventually leaving them stripped, reads like a "Blackie Daw" fiction story. One is left to wonder how such a person manages to retain a broker's license to prey upon the unsuspecting public.

■ We feel that no good purpose would be served in reciting the sordid details. Suffice it to say that from a careful perusal of the entire record it manifestly appears the evidence fully supports and sustains the judgment and findings of the trial court. To have held otherwise would have resulted

in a travesty on justice. There is no merit to defendant's first assignment of error.

The final assignment of error attacks finding of fact V and the conclusions of law for the reasons and upon the grounds as follows: (1) The evidence is uncontradicted that the action of defendant was not to convert said notes and moneys loaned. (2) The evidence does not establish that the alleged misrepresentation of Fletcher (who in fact was defendant) was in any way material to the purchase of the "Canary Court" property nor that appellees relied on said false statements or would not have bought had they known defendant owned same. (3) That Jones is well studied in real estate law and thoroughly examined the property. (4) Under the second claim for relief plaintiff failed to prove the measure of damages in that he did not prove the motel (Canary Court) was worth less than the $80,000 they contracted to pay for it.

This assignment insofar as it relates to the "Canary Court" deal (which it will be recalled was purportedly owned by a Mrs. Delpha Fletcher), can only be put in its true light by quoting from defendant's testimony on cross examination, viz.:

"Q. Who is Delpha Fletcher? A. That is my mother."

" * * * * * *

"Q. These transactions where you have used her name, does she have any interest in them at all? A. None whatsoever.

"Q. Does she know anything about them? A. None whatsoever. She wouldn't know one piece of property from another.

" * * * * * *."

Yet at all times defendant was representing to plaintiff "That Mrs. Fletcher was a client of hers who had the Canary Court for sale." This fictitious person was, according to the evidence, flitting in and out of Phoenix and making "mysterious" telephone calls, but no one could recall ever having seen her. In fact defendant admitted that her mother had not been in Phoenix during the previous four or five years. Numerous documents admitted as exhibits (including the escrow agreement covering Canary Court) were purportedly signed and some were even acknowledged "Delpha Fletcher", though defendant was forced to admit that she was the one who actually signed same. She sought to justify such actions by producing at the trial an unrecorded blanket power of attorney purportedly executed by her mother on July 1, 1952. None of these signatures followed the usual form of "Delpha Fletcher by Paula Hassenpflug, attorney in fact."

When the real parties in interest were before the court, on this record, it seems nothing short of ridiculous to contend that before plaintiffs could recover they must

bring an independent action to rescind the fictitious contract for the sale of the Canary Court property. Neither defendant nor her alter ego, Delpha Fletcher, owned the property. Furthermore plaintiff had written terminating the escrow because "Fletcher" could not deliver title.

 Where a confidential relationship exists, in establishing a case of fraud, it is not necessary to show moral guilt on the part of defendant; nor actual intent to defraud. In re McDonnell's Estate, 65 Ariz. 248, 179 P.2d 238. Nor is it necessary to prove that the plaintiff relied on a misrepresentation or had the right to rely. Leigh v. Loyd, 74 Ariz. 84, 244 P.2d 356. Further as was said in Christensen v. Pryor, supra, 75 Ariz. at page 267, 255 P.2d at page 199:

> "If a realtor, by false and fraudulent representations, practices any kind of fraud upon his client, to the latter's damage, he is responsible therefor. Typical of these practices is where the realtor, by selling to himself or through a dummy, makes a secret profit. 12 C.J.S. Brokers § 41."

It appears defendant was making a profit by charging broker's fees to all parties concerned; to Jones, to Thomas (the real owner of Canary Court) and apparently also to Delpha Fletcher. While this latter may seem incongruous, since Fletcher and Hassenpflug are one and the same party, it is not so in the light of her attempt to settle the $11,000 debt owed to plaintiffs by trying to buy the Canary Court for $70,000, selling it to plaintiffs for $80,000, and merging the $1,000 personal loan on a mortgage for less than that amount, while at the same time getting a broker's fee of $1,000.

As to the contention concerning Jones' "real estate education". His introduction to defendant began his matriculation in her school of real estate law. Defendant not only furnished him with books to study, supposedly so he could spot real estate for her, but also furnished him with a practical education seldom, if ever, covered either by books or experience.

Plaintiff has asked that judgment be entered by this court against the sureties on the supersedeas and cost bond. It manifestly appearing from the statute— A.R.S. Sec. 12–2105—that such relief is warranted and proper, the court directs its Clerk to include within the mandate issued hereon judgment against such sureties.

Judgment affirmed.

WINDES, PHELPS, STRUCKMEYER and JOHNSON, JJ., concur.