370 P.2d 268

Pete L. BAKER and Ethel Baker, husband and wife, Appellants,

v.

Samuel LEIGHT, dba Leight Realty, and Orland Fiandaca, Appellees.

No. 7074.

Supreme Court of Arizona,

In Division.

March 28, 1962.
Rehearing Denied June 5, 1962.

Warren R. Brock, Tucson, for appellants.

William Gordon, Tucson, for appellee Leight.

Silver, Silver & Ettinger, by Jack A. Ettinger, Tucson, for appellee Fiandaca.

HENRY S. STEVENS, Superior Court Judge.

This cause was tried in Pima County and resulted in a directed verdict for the defendants at the close of plaintiffs' evidence. Mr. and Mrs. Baker (appellants) were the plaintiffs below and the buyers in the real estate transaction in question. They believe that they are not required to complete the purchase contract and they elected to rescind.

Appellee Fiandaca, a defendant below, is the owner and seller of the real estate in controversy. Appellee Leight, the other defendant, is a duly licensed real estate broker who negotiated the transaction in question.

On October 21, 1958, the buyers turned over to the broker a $6,000 good faith de-

posit and signed a document partly printed and partly in longhand, which document carries the title, "Deposit receipt and agreement." On the face of the document the printed portion recites that the broker "as agent of the seller, * * * has this day sold to the above named purchaser, subject to acceptance by the seller and to marketable title as evidenced by a standard form of Owner's Title Insurance Policy issued by a qualified Title Insurance Company * * *."

The document further provides: "In the event title to said property as herein agreed to be conveyed is found by Title Insurance Company to be unmarketable as shown above, at time of closing sale, the earnest money shall be returned to purchaser."

With reference to the good faith deposit it is provided, " * * * after delivery of preliminary report of title insurance to this agent or if an escrow agent be designated herein, then to such escrow agent * * * all funds and instruments necessary to such closing * * *." The name of the Tucson Title Insurance Company was written in in the blank space in relation to that particular company which was to be employed as the escrow agent.

In longhand on the face of the agreement the following words were inserted:

"Property to be sold on contract for sale. Purchasers to assume existing first mortgage of approximately $52,000, payable at approximately $518.39, including 7% interest, * * *."

After the broker and the buyers signed, the matter was presented to the seller who made the following modification, among others:

"5. The purchaser is to assume the legal obligation for the first mortgage."

This and other modifications were accepted by the buyers.

The evidence established that up to this point none of the parties, including the broker, had personal knowledge of the actual language contained in the mortgage referred to. An escrow was opened. Tucson Title made a preliminary search and advised the parties. At that time they first became personally aware of the fact that the mortgage contained the following clause:

"16. It is expressly understood and agreed that this mortgage shall become due and payable forthwith at the option of the Mortgagee if the Mortgagors shall convey away the said premises or if the title thereto shall become vested in any other person or persons in any manner whatsoever."

This mortgage was a matter of record in the County Recorder's office for some months prior to the execution of the aforesaid deposit receipt and agreement.

When the buyers learned of this clause, they declined to go ahead with the trans-

action, it being the opinion of the buyers that this clause was incompatible with the longhand language of the contract which authorized payment at $518.39, more or less, per month.

The sellers urge among other matters that since the parties contemplate an agreement for the sale of real estate as distinguished from a deed with a note and mortgage back for the deferred balance that as a matter of law Clause No. 16 does not apply.

The seller desiring to go ahead with the contract and the realtor not refunding the good faith deposit, the buyer brought action specifying several claims for relief:

The first claim for relief was in relation to a mutual mistake of fact in that both parties assumed that the buyers had the right to pay the first mortgage in installments as per the agreement signed by the parties.

The second claim alleges false and fraudulent representations by the broker and seeks punitive damages.

The third claim alleges that the agreement was vague and ambiguous and is, therefore, not enforceable.

The fourth claim urges that Tucson Title found that the title was unmarketable and,

The fifth claim is for unjust enrichment.

The evidence discloses that Baker had bought and sold several properties through Leight. In some instances Leight represented Baker as the seller and in other instances Leight represented Baker as the buyer. At the time of the transaction in question an escrow was in the process of being closed in connection with the sale of a piece of property. In connection with that sale Baker was the seller and Leight was his broker. Leight knew that there was approximately $8,000 in escrow which would presently be paid to Baker. Leight then attempted to interest Baker in the purchase of the property which is now in litigation.

The trial court ruled that the agreement was plain and unambiguous; that Baker was charged with knowledge of the terms of the mortgage; that as a matter of law Baker assumed and agreed to pay the mortgage with all of its terms and conditions; and that Baker had no right to rescind. In the event that the conclusions of the trial judge are correct, then his decision to direct a verdict is correct and there is no need to review other aspects of this case.

This court agrees that the agreement of the parties is clear and unambiguous. This court does not agree with the trial court as to the legal effect. Had the agreement merely said, "The buyer buys subject to the mortgage," or "The buyer assumes and agrees to pay the mortgage," then the buyer as between the buyer and seller would be charged with full knowledge of the terms and conditions of the mortgage. However, when the seller expressly contracts that the buyer shall be privileged to

pay the mortgage at approximately $518.39 per month, then the buyer is entitled to rely on that contract in so far as the seller is concerned. The same is not true in so far as the mortgagee is concerned, the mortgagee not being a party to the sale contract. The seller having contracted that the buyer could pay in monthly installments and being silent in relation to an acceleration clause, it then became the seller's obligation to secure from the mortgagee a valid waiver of clauses which differ from and which are more onerous than the agreement.

The seller urges that an agreement for the sale of real estate is not a present conveyance. This is a technically correct statement. However, the language in Clause 16, "or if the title thereto shall become vested in any other person * * * in any manner whatsoever" includes a contract of sale which contract vests in the buyer the right to acquire the title subject to the default of the buyer. The above-quoted mortgage language gives to the mortgagee the apparent right to accelerate. The court need not determine in this cause whether or not this right is in all events enforceable. It is sufficient to say that a buyer is not required to take with such a clause in view of the language of the contract and thereby assume the real risk of being required to defend a mortgage foreclosure with the questionable defense of an absence in the right of the mortgagee to accelerate.

It was the seller's obligation to procure the waiver of Clause 16 from the mortgagee and to come forward immediately upon being informed that the buyer elected to rescind because of the fact that Clause 16 constituted a material breach of the contract. This the seller did not do. The buyer made out a prima facie case. It was reversible error to direct a verdict for the defendants. The case must be retried as the defendants have not had the opportunity of defense. It, therefore, becomes appropriate to consider other aspects of the case.

 It is clearly the law of this state that there is a fiduciary relationship between a broker and his seller. Hassenpflug v. Jones, 84 Ariz. 33, 323 P.2d 296. This was recognized by the trial court. The trial court ruled in substance that there is no duty from the broker to the buyer. The court ruled out the plaintiffs' offer of proof as to statements made by the broker at the time of and prior to the execution of the deposit receipt and agreement. It will be recalled that this was at a time when Baker had yet to receive some $8,000 from an escrow wherein the broker had represented Baker as a seller's broker.

 The offer of proof was to establish by Baker and by an escrow officer of the Tucson Title Company that the broker told the buyer about the property and that the broker repeatedly told the buyer that he, the broker, "would look after his inter-

ests; that he would not get hurt, and that he could depend upon him entirely." And, further, that he, the broker, "repeatedly told him that he would look after his interests and that he would not get hurt on the deal." In support of this offer of proof, the plaintiffs further offered a certificate from the Secretary of State attaching a complete and correct copy of Title 37, being Rules and Regulations of the State Real Estate Department, along with the Code of Ethics of the National Association of Real Estate Boards. The broker testified that he was familiar with the Rules and Regulations and the Code of Ethics. Part of the objection in relation to these was that the broker was not a member of the National Association. It is immaterial as to whether the broker is a member of the National Association if it is definitely established that this Association's Code of Ethics has been adopted and is applicable to those in the real estate profession in this state.

A.R.S. § 41–1004 makes the Office of the Secretary of State the repository for Rules and Regulations adopted by the various administrative agencies of the state.

Chapter 20 of Title 32 of the Arizona Revised Statutes, being Section 32–2101 and following sections, relates to the Real Estate Department of the state government. This department supervises the licensing of real estate salesmen and real estate brokers. Subsection 4 of Section 32–2106 authorizes the adoption of rules and regulations. Such rules and regulations have been adopted and filed with the Secretary of State. In the Secretary's office they are known as Title 37. Section 32–2153 relates to grounds for the suspension or revocation of licenses. Licenses may be revoked or suspended when the licensee has committed or attempted certain acts, including:

"4. Acted for more than one party in a transaction without the knowledge or consent of all parties thereto.

\* \* \* \* \* \*

"6. Violated any rules or regulations prescribed by the board."

Rule 10 of the Real Estate Department's rules formerly read as follows:

"10. The Code of Ethics of the National Association of Real Estate Brokers which has been adopted by the state and local boards throughout the United States. In questions of conduct this code is hereby adopted by the Department and incorporated as part of its rules and regulations." [1]

---

1. Under the February 1961 revision of the rules this provision is now found in Rule 20 which reads:

"20. The Code of Ethics of the National Association of Real Estate Boards which has been adopted by state and local boards throughout the country is regarded as the standard of conduct by real estate men throughout the United States and shall be regarded as such in the State of Arizona."

Article 28 of the 1957 revision of the Code of Ethics read in part: "A Realtor when acting as a broker should make it clear for which party he is acting * * *."

All these matters appear in the offered evidence. The broker testified that he was familiar with all of these matters. This evidence was material in relation to the plaintiffs' claim for punitive damages.

In fairness to the trial court, it must be stated that the problems treated in this opinion were not presented to the trial court as simply as they are stated herein. The foundation offered by the plaintiffs could well have been better organized and better coordinated with the several offers of proof.

■ The broker admitted that he did not turn the good faith deposit over to the title company. Further questions were asked to which objections were made and plaintiffs' counsel stated, "I am entitled to know what happened to the money."

To this the broker's counsel advised, "We admit we have the money. We admit we did not give it to them. They have to prove they are entitled to it; that's all."

The court then stated, "Sustained, and the jury is instructed to disregard it. It is sustained. It is immaterial where the money is. Whatever judgment goes against the defendant, he is liable. Whether he has or doesn't have the money wouldn't affect the situation any."

This ruling is error in that it relates to the good faith on the part of the broker and whether he has complied with his obligations under the agreement. It is also material in relation to the matter of the presence or absence of the right to recover punitive damages.

■ The plaintiff relies on the business records rule which is as follows: "Any record of an act, condition or event, shall, insofar as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission." (Subsection 2 of Rule 44q of the Rules of Civil Procedure, 16 A.R.S.) His reliance upon this rule was in an effort to introduce into evidence out of the files of the Tucson Title a letter written to Tucson Title from the mortgagee, which letter was written in response to a letter from Tucson Title; the objection was sustained. This court agrees. Certainly the letter from the mortgagee to Tucson Title was not made in the regular course of Tucson Title's business so as to come within the rule. There was a further offer in relation to the letter through a witness who had some official capacity with the mortgagee. In the opinion of the court the offer was not in sufficient detail to lay a

proper foundation and there was no error in rejecting the offer of proof.

█ The Bakers made offers of expert opinion evidence to the effect that Clause 16 rendered the title to the property unmarketable and that Clause 16 would have an adverse effect upon the sale price. This court in Sabin v. Rauch, 75 Ariz. 275, 279, 255 P.2d 206, 208, laid down the following guidepost in relation to marketable title:

"A marketable title must be free from any reasonable possibility of future litigation which may be necessary to remove apparent or real defects, free from reasonable doubt, and not clouded by any outstanding covenant or conveyance. * * * The question for the court to decide is not whether the title is good and the purchaser could successfully defend the same in the event it were attacked. The question is whether there is a reasonable doubt that the defendant would be hampered in marketing the property she purchased."

We hold that the trial court properly rejected the offers of proof as to the marketability of title because " * * * whether the title to property is marketable is a question of law for the court and the opinion of a conveyancer or lawyer on that question is not admissible." Berlin v. Caplan, 211 Md. 333, 127 A.2d 512 (1956); see also

anno. 90 A.L.R. 609. "A judge may obtain information from [witnesses] if he desires it, on matters which he does not clearly comprehend, but he cannot be compelled to receive their opinions as matters of evidence." Winans v. N. Y. & Erie R. R. Co., 21 How. 88, 16 L.Ed. 68 (U.S.1858); see also 20 Am.Jur. Evidence §§ 799–800.

The contract signed by the parties provides that the earnest money would be returned to the purchaser if the title insurance company found the title to be unmarketable. It would be appropriate to receive evidence as to whether Tucson Title would or would not issue its standard form of title policy.

There are other matters which the court does not rule upon as it is deemed that such matters will be properly cared for during the course of the new trial.

This court in no way seeks to restrict proper defensive evidence. This opinion does not purport to treat all of the various matters assigned as error. It is the opinion of the court that with a clarification of the foregoing underlying principles this case can be properly retried.

This cause is reversed and remanded for a new trial.

UDALL, V. C. J., and LOCKWOOD, J., concur.