509 P.2d 1053

**ORNAMENTAL AND STRUCTURAL STEEL, INC., a corporation; Best Block & Pipe, Inc., a corporation; General Metal Supply Company, a corporation; Arizona Major Appliance Distributors, a corporation; Aire-Flo Products, Inc., a corporation; E. C. Junken Electric Service, Inc., a corporation; Mohawk Wholesale & Equipment Co., Inc., a corporation; Wayne Janney, dba Janney Sand & Gravel; Al Minerva, dba Lynae Home Furnishers; Appellants,**

**v.**

**BBG, INC., an Arizona corporation, dba Allied Realtor, Appellee.**

**No. I CA–CIV 1796.**

Court of Appeals of Arizona, Division 1, Department A.

May 17, 1973.

Rehearing Denied July 10, 1973.

Frank Gabusi, Yuma, and Stark & Wood by J. Robert Stark, Phoenix, for appellants.

Westover, Keddie & Choules by Ted B. Bowen, Yuma, for appellee.

DONOFRIO, Presiding Judge.

This is an appeal from a judgment in favor of plaintiff-broker awarding it the balance due on an agreed commission. The principal issue on appeal is the propriety of that award.

The pertinent facts at the time this suit was brought, as they relate to this appeal, are as follows. Plaintiff-appellee, hereinafter referred to as plaintiff, was an Arizona corporation duly licensed and authorized to act as a real estate broker. Defendants-appellants, hereinafter referred to as defendants, were subcontractors and suppliers in the building and construction business. These defendants had supplied building materials, labor and equipment in the construction of a multi-unit apartment project located in Yuma, Arizona, known as the Holiday Garden Apartments. Shortly after construction was completed, the first mortgage holder on the property, First Federal Savings & Loan Association, brought an action to foreclose upon its mortgage. During the initial pendency of the First Federal foreclosure action, some twelve such contractors and materialmen counterclaimed and cross-claimed to foreclose their statutory liens. Nine of those mechanic's lien creditors are appellants herein.

In order to resolve the conflicting claims of the interested parties in the aforesaid project, it was mutually agreed that a sale of the properties should be effected, and that the various creditors and mortgage lienholders would thereupon be paid out of the proceeds of the sale.

As a consequence of the above plan, a majority of defendant creditors retained Mr. Thaddeus G. Baker, attorney-at-law, to represent their interests in the matter. Mr. Baker solicited the help of a number of realtors in the Yuma area, including the plaintiff. The solicitations were in the form of letters giving general guidelines, including a suggested selling price.

Plaintiff submitted various offers from prospective buyers, and ultimately put the defendants in contact with the eventual group of purchasers of the property. Among the group of buyers was the Bishop Realty Co. (Bishop), a real estate brokerage firm, not licensed to do business in Arizona. Prior to the transactions under scrutiny here, Bishop apparently had entered into an agreement with the plaintiff whereby each would split the commissions with the other upon the close of transactions where they represented the adverse parties. Although Bishop ultimately became one of the purchasers of the property, it initially acted only as a broker-agent in attempting to find prospective buyers for the properties.

An installment sale agreement was entered into on the 3rd of November, 1967 between the numerous parties. Incorporated into the agreement was a paragraph to the effect that the plaintiff was the "procuring cause" of the sale and that its commission would be $12,500, payable $6,000 from the cash proceeds of the escrow, and $6,500 together with interest at 6% from the first annual payment.

It was undisputed that not only had plaintiff entered into a fee-splitting agreement with Bishop some time prior to the sale of the property, but that subsequent to the sale it had in fact "kicked back" the sum of $3,000 to the buyers. There was a dispute, however, over whether the fee-splitting arrangement had been disclosed to Mr. Baker prior to the consummation of the agreement. Plaintiff contended it had disclosed the agreement to the defendants' agent, Mr. Baker, a week to ten days prior to the November 3rd agreement. Defendants contended they did not become aware of the arrangement until after the escrow had been consummated and the apartments sold.

Plaintiff eventually sued in Superior Court for the $6,500 balance due, plus interest, and defendants defended principally on the basis that plaintiff was not entitled to its commission because it had breached its fiduciary duty to the defendants in entering into the fee-splitting agreement and failing to disclose this to them. Defendants further contended that they had made full disclosure of their bargaining position to the plaintiff-broker and intimated that such information had been wrongfully passed on to the buyers to aid them in their negotiations with the defendants. Defendants also counterclaimed for a return of the $6,000 already paid.

The case was tried to the court sitting without a jury. At the conclusion of trial, the court made a number of findings of fact and conclusions of law. The findings of fact pertinent to the disposition of this appeal were:

"5. *That the plaintiff acted as broker for defendants in the sale of the property and that the fiduciary relationship of that status exists.*

"6. *That previous to the date upon which the agreement was entered into by which the brokerage fee was fixed, but subsequent to the date upon which the brokers were first contacted, the plaintiff brokerage firm entered into an agreement with the Bishop Realty Inc. a corporation owned and controlled by one of the purchasers of the property to share fifty-fifty all commissions arising in business upon which both the plaintiff and said Bishop Realty Inc. worked together in Arizona and Idaho.* That said Bishop Realty Inc. was engaged in the brokerage business but not licensed in Arizona.

"7. That pursuant to such agreement the plaintiff did pay $3,000 of the first $6,000 to the said Bishop Realty Inc.

"8. *That plaintiff has failed to establish by a preponderance of the evidence that such agreement as to fee-splitting was revealed to Thad Baker, attorney and active negotiator for most defendants. That such agreement as to sharing of commission was not revealed either to Keith Benton, who represented at least one creditor, or to any of the creditors personally.*

\*   \*   \*   \*   \*   \*

"10. *That Mr. Baker and clients had given to Mr. Bradley, in confidence, information defendants had as to their position, and so he also knew the dollar amount shown in the agreement.* Further, he knew that the creditors whom Baker represented had out more money than they were getting because their claims were larger, but the provable claims in this particular matter were limited to those charged in the agreement. That the agreement provided that the creditors reserved their rights of action against Bob Olson. *That had defendants known that Bradley and Green had such an agreement with Bishop their disclosures made by defendants to Bradley might not have been as extensive as they were.*" (emphasis added)

It is to be noted that Messrs. Bradley and Green were real estate agents operating out of the plaintiff corporation.

The trial court then entered judgment for the plaintiff in the amount of the $6,500 balance plus interest because the defendants had failed to establish any damage to them or that any "fraud" had been

perpetrated by the plaintiff on the defendants. Defendants' appeal followed.

We have carefully examined the record and have determined that even though there is some conflicting evidence in this case, there is reasonable evidence in the record to support the findings of the trial court. 16 A.R.S., Rules of Civil Procedure, Rule 52(a); *See,* Kolberg v. McKean's Model Laundry & Dry Clean. Co., 9 Ariz.App. 549, 454 P.2d 867 (1969). Therefore, this Court will not disturb those findings and will accept them as supported by the record.

Given the above background, we must answer defendants' issue presented on appeal, namely, whether the plaintiff's actions in failing to disclose the fee-splitting agreement constitutes a breach of the fiduciary duty owed to the creditor-principals, and thus defeat its right to compensation, even without a showing of damages or without establishing the elements of actionable fraud.

■ It has been established that a real estate broker who is the "procuring cause" of a transaction is entitled to a commission. Puente v. Lee, 103 Ariz. 534, 447 P. 2d 51 (1968); Galbraith v. Johnston, 92 Ariz. 77, 373 P.2d 587 (1962).

■ It is also clearly established that a broker occupies a confidential and fiduciary relationship with his principal, and hence is held to the highest ethical standards of fairness and honest dealings. Baker v. Leight, 91 Ariz. 112, 370 P.2d 268 (1962); Hassenpflug v. Jones, 84 Ariz. 33, 323 P.2d 296 (1958); Christensen v. Pryor, 75 Ariz. 260, 255 P.2d 195 (1953); Leigh v. Loyd, 74 Ariz. 84, 244 P.2d 356 (1952); Haymes v. Rogers, 70 Ariz. 257, 219 P.2d 339 (1950).

The Arizona Supreme Court, in Leigh v. Loyd, supra, stated the following:

"* * * The confidential relationship imposed a duty on the appellant to disclose the true facts. A real estate agent owes the utmost good faith and loyalty to his principal. [citation omitted] *Suppression of a material fact which a party is bound in good faith to disclose is equivalent to a false representation.* [citations omitted]" (emphasis added) 74 Ariz. at 87, 244 P.2d at 358.

In 12 Am.Jur.2d, Brokers § 168, at p. 909, the following general proposition can be found:

*"A broker is not entitled to compensation if he fails to disclose to his principal any personal knowledge which he possesses relative to matters which are, or may be material to his employer's interests, or if he acts adversely thereto, either for the purpose of aiding another or with the design of securing a secret profit for himself, or otherwise advancing his own welfare at the expense of that of his employer. . . .* Except in the case of a middleman, it is *fraudulent* for a broker to act in behalf of both parties to a negotiation, and he cannot recover from either."* (emphasis added)

*See also,* 12 C.J.S. Brokers § 72, at p. 164.

■ It is therefore a well-settled rule, founded upon grounds of public policy, that a broker who contracts to act as agent for one party to a transaction enters into a fiduciary relationship with that party and assumes all the responsibilities imposed by that relationship. He owes a duty of utmost good faith and loyalty to his principal and may not serve more than one master.

■ The trial court found that a fiduciary relationship did indeed exist; that the broker had entered into an agreement with a party not his principal and failed to disclose the existence of the agreement to his principal; and that, in confidence, valuable information had been disclosed to the broker by its principals, which information might not have been disclosed had the creditors known of the original agreement.

In 12 C.J.S. Brokers § 72, at p. 164, is the following:

"* * * [*A*]*n agreement between real estate brokers, representing different principals, to pool or to divide their commissions in case the transaction is com-*

*pleted is a breach of good faith toward the principals, as well as against public policy, and deprives them of their right to compensation, unless both principals know of the arrangement and consent thereto or acquiesce therein.* This rule applies, although the principals themselves finally conclude the sale on the terms agreed on.

"On the other hand, the right of a broker to compensation is not defeated by his agreement to divide the commission with a person other than the broker of the adverse party, regardless of whether such person is the adverse party, another broker not representing the adverse party, or a third person, and regardless of whether or not the principal has knowledge of the agreement; such an agreement does not defraud the principal, but rather involves a personal sacrifice on the part of the broker which is intended to advance the interests of the principal." (emphasis added)

Although Bishop was one of the ultimate buyers of the property, its role at the time the fee-splitting agreement was effectuated was only that of a *broker.* The emphasized portion of 12 C.J.S. Brokers § 72, supra, is therefore more applicable in this context. By entering into the agreement, plaintiff became enmeshed in a conflict between the duty owed to its principals and the duty owed to Bishop. The only means available to it of resolving this dilemma would have been a full disclosure of the arrangement to the defendants, and their subsequent consent to the agreement. We find that plaintiff's failure to disclose the agreement as found by the trial court, constituted a breach of its fiduciary responsibility, thus depriving it of its right to compensation.

The trial judge in his conclusions of law made the following statement: "I cannot see that fraud has been established. The finding above made remains and may be of value if defendants appeal." We are unable to determine the purpose of this specific finding (failure to establish fraud)

except that the trial court apparently proceeded upon the assumption that fraud in all its elements had to be shown by defendants, in addition to the fiduciary relationship and the nondisclosure of the agreement, in order to bar recovery on the broker's commission. While the Court of Appeals is bound by the trial court's findings of fact, unless clearly erroneous, it is not bound by that court's conclusions of law and may draw its own legal conclusions from the facts. Dietel v. Day, 16 Ariz. App. 206, 492 P.2d 455 (1972).

The trial court entered judgment for the broker because of the creditors' failure to show damages and apparently because the nine elements of actionable fraud had not been established. A reading of the pronouncements of our Supreme Court would show that where a fiduciary relationship exists and a breach of that fiduciary duty has been found, damages need not be proven to defeat the broker's right to a commission. It has also been determined that it is not necessary, in establishing a case of "fraud" where a confidential relationship exists, to show moral guilt or an actual intent to defraud or that there was reliance on a misrepresentation or that the victim had a right to rely. Hassenpflug v. Jones, supra. Therefore, it is not necessary to establish the nine elements of actionable fraud in the same way necessary, for example, when a misrepresentation is made. The suppression of a material fact which the broker was bound to disclose was equivalent to "fraudulent" activity sufficient to constitute a breach of duty. Leigh v. Loyd, supra; Haymes v. Rogers, supra. The trial court was clearly in error in proceeding under the assumption that the defendants had the burden of proving actionable fraud resulting in damages.

Plaintiff argues on appeal that the record clearly established that its function was merely that of a middleman and that there was no duty to make any disclosures. It readily admits, however, that this issue has been raised for the first time on appeal. This Court will not entertain issues raised for the first time on appeal.

Judgment of the trial court is reversed and the case is remanded with directions that judgment be entered in favor of the defendants upon plaintiff's complaint, and in their favor upon their counterclaim.

Reversed and remanded.

OGG and JACOBSON, JJ., concur.