595 P.2d 671

**George C. UNDERDOWN and Betty L. Underdown, husband and wife, Appellants,**

v.

**C. Edward RECHE, Appellee.**

**1 CA–CIV 4060, 1 CA–CIV 4086 and 1 CA–CIV 4131.**

Court of Appeals of Arizona, Division 1, Department A.

May 8, 1979.

Osmond Burton, Jr., Scottsdale, for appellants.

James L. Corbet, Wickenburg, for appellee.

OPINION

DONOFRIO, Judge.

This appeal comes to us from a judgment entered by the Superior Court of Maricopa County on August 29, 1977 and subsequent orders made by such court. The judgment awarded the defendant/appellee Reche the full amount due on an unsecured promissory note from plaintiffs/appellants Underdown and reformed a deed between the parties by deleting certain described property. The trial court subsequently held an evidentiary hearing which concluded with the trial court ordering appellants to pay attorney's fees and costs with interest to appellee.

Appellants claim that the trial court committed reversible error in reforming the deed, and secondly, in the alternative, they claim that if the reformation of the deed was proper the trial court erred in not reducing the purchase price of the land by the same proportion that the amount of land was reduced by the reformation.

Before we discuss these issues we shall briefly set forth the facts that were presented below in the light most favorable to affirming the trial court. Appellants purchased real property from appellee by purchase contract and receipt. The property purchased was listed for sale with appellant Betty Underdown's real estate company, The Buena Vista Realty, of which she was the broker. The purchase contract called for the total purchase price of $30,000 payable as follows: $1,000 on execution of the escrow agreement; $20,000 to be secured by a mortgage; and $9,000 by a personal note from appellants.

The purchase contract, the escrow agreement, the joint tenancy deed issued by appellee, and the deed granting appellee his rights and interests to the property in question all have, in one form or another, the following legal description:

"PARCEL No. 1: Lots 1 and 2 YAGGY ADDITION to Wickenburg, book 8 of maps page 21 Records of Maricopa County, Arizona."

"PARCEL No. 2: The Northwesterly 5 feet of Lot 15, and all of Lots 26, 27, 28 and 29, Block 1 CURRY ADDITION, according to Book 3 of maps, page 16, Records of Maricopa County, Arizona."

It subsequently came to light that an error had been made in the written legal description. Neither Lot 29 nor any part of Lot 15, Curry Addition, were owned by appellee, or had they ever been. There is an old house on Lot 29 and a Catholic Rectory on Lot 15. Neither appellants nor appellee contemplated that the house or the rectory were to be included in the sale.

At the time the error was discovered by appellants, they had paid the $20,000 mortgage and owed $5,217.92 in principal and $608.76 in interest on the original $9,000 promissory note. Appellants refused to make any further payments on the note arguing that they thought they were purchasing 270 feet of frontage on Tegner Street. They do not contend that they intended to purchase the actual land described by Lot 29 and the northwesterly 5 feet of Lot 15. As a basis for their argument, appellants claim they relied on a statement in the listing agreement that had been prepared by their agent, Bonnie Figgins.

■ The courts of Arizona have long held that a mutual mistake is shown if there is evidence that the seller intended to sell and the buyer intended to purchase land which is different than that described in the deed. *McMillon v. Town of Flagstaff*, 18 Ariz. 536, 164 P. 318 (1917); *Longshaw v. Corbitt*, 4 Ariz.App. 408, 420 P.2d 980 (1966); *Chantler v. Wood*, 6 Ariz.App. 134, 430 P.2d 713 (1967). Reformation is the proper action to be utilized to correct an erroneous description in a deed arising from mutual mistake.

■ After a thorough review of the record here on appeal, we find that it contains uncontroverted evidence of mutual mistake. Neither party anticipated nor contemplated that the actual land described as Lot 29 and the northwesterly 5 feet of Lot 15 was to be included in the sale, and thus, it was only

proper for the trial court to have removed the improper description from appellee's deed to appellants. The trial court's reformation of the deed is affirmed.

We cite the following testimony of appellant, Mr. Underdown, in further support of the above conclusion:

"THE COURT: You did not believe you were buying a part of the rectory and that house, did you?

A. Not at the time, no.

\*      \*      \*      \*      \*      \*

BY MR. CORBET:

Q. \* \* \* And is it not true that Mr. Reche told you or pointed out to you and showed you the property lines boundering the property that was to be listed as well as the property that was to be sold?

A. [Appellant] Yeah. He showed me the property when I purchased the property.

\*      \*      \*      \*      \*      \*

Q. So you had an understanding of the exact boundaries of the property at the time you bought it? You knew what the property looked like, you knew where the four corners were?

A. I knew what the property looks like correct."

Appellants' second issue that the court erred in not reforming the purchase price of the sale is also without merit. Appellants claim that they had relied on the listing agreement as it related to the front footage on Tegner Street of the property in question. They argue that the listing agreement represented that the property had a 270-foot frontage when in actuality it had only a 193-foot frontage. We do not agree with their contention.

Two separate listing agreements were executed by appellee. The one that appellants primarily base their argument upon (Exhibit 9) contains the following language:

"FEATURES zoned commercial 270′ approx tegner from tegner to alley." .

The purchase contract and receipt that was executed by appellee and appellants contained no such language as to the Tegner frontage, and had the following limiting clause as its fourth paragraph:

"Fourth: It is understood and agreed that the Buyer is of legal age and that said property has been inspected by the Buyer or the Buyers duly authorized agent; that the same is, and has been, purchased by the Buyer as the result of said inspection and not upon any representation made by the Seller, or any selling agent, or other agent of the Seller, and the *Buyer hereby expressly waives any and all claims for damages because of any representation made by any person whomsoever other than as contained in this agreement, and the Seller or his agent shall not be responsible or liable for any inducement, promise, representation, agreement, condition or stipulation not specifically set forth herein.*" (Emphasis Supplied)

■ Both appellants are licensed real estate agents, and appellant, Mrs. Underdown, is the broker of the agency which had entered into the listing agreements with appellee. A fiduciary relationship exists between a broker and his client, and the broker owes his client the utmost good faith. *Baker v. Leight,* 91 Ariz. 112, 370 P.2d 268 (1962), and *Hassenpflug v. Jones,* 84 Ariz. 33, 323 P.2d 296 (1958).

■ Appellants took the listing agreements, prepared the sales contract and had actual knowledge of the physical boundaries of the property. We do not pass upon the issue of whether it was incumbent upon appellants to have thoroughly checked the legal description of the property, or to have actually measured the property boundaries, but we do hold that appellants are bound by their contract with appellee, specifically with regards to paragraph 4 thereof.

After careful review of the record in this cause, we find no valid grounds for error. Appellants received what they bargained

**442**

for, and they had full knowledge of the bargain.

Affirmed.

WREN, P. J., Department A, and McDONALD, Jr., Judge,* concur.