700 P.2d 898

**Harry B. CHRISTMAN and Mildred M. Christman, husband and wife, and John R. Offer and Joan W. Offer, husband and wife, Plaintiffs/Appellants,**

v.

**Monte SEYMOUR and Thelma Seymour, husband and wife; Stewart Title & Trust of Tucson, an Arizona corporation; Sam Alvardo; and I. Glenn Lance, Defendants/Appellees.**

2 CA–CIV 5163.

Court of Appeals of Arizona, Division 2, Department B.

March 27, 1985.

L.B. Solsberry, Sonoita, and Donald Estes, Tucson, for plaintiffs/appellants.

O'Dowd, Burke & Lundquist by Robert E. Lundquist, Tucson, for appellees Seymour.

Molloy, Jones, Donahue, Trachta, Childers & Mallamo, P.C., by D. Michael Mandig, Tucson, for appellee Stewart Title & Trust of Tucson.

## OPINION

LIVERMORE, Judge.

In 1966 defendant Monte Seymour, acting as a real estate broker, negotiated a

sale of property to a trust comprised of the following beneficiaries: plaintiffs Harry and Mildred Christman (25%), plaintiffs John and Joan Offer (12½%), defendant Harvey Gutmann (12½%), defendant Sam Alvarado (12½%), defendant Glenn Lance (12½%), Seymour (18¾%), and Robert De-Bolt (6¼%). Defendant Stewart Title & Trust became successor trustee of this trust. The trust provided that the trustee, on Seymour's direction if he was acting on instruction from a majority of the beneficiaries owning more than half of the beneficial interest of the trust, could effect a sale of the trust property.

For the year 1979, all beneficiaries authorized Seymour to sell the trust property and to receive a 10% commission if he were successful. In August of that year, the beneficiaries were asked by Seymour if $2,000 an acre was an acceptable price. All save plaintiffs, who did not respond, indicated that it was. In September the beneficiaries were asked if $2,000 an acre, with 20% down, the remaining principal and interest to be paid over ten years, was acceptable. Plaintiff Offer did not respond. Plaintiff Christman, after and without knowledge of the sale in issue, said that if he was the "lone hold-out" such an offer would be acceptable. All other beneficiaries were in favor of the transaction. The original proposed purchaser did not complete this transaction. Seymour effectuated an identical transaction by having the trust property transferred to another trust in which he was the sole beneficiary. He did not notify his co-beneficiaries that he was the purchaser until after the transaction was complete.

On discovering that Seymour had, in effect, sold the trust property to himself, plaintiffs repudiated the transaction and brought this suit to set it aside. All other beneficiaries ratified the transaction, although one of them, Lance, later acquired an option to obtain a 50% interest in the land. Plaintiffs appeal from a summary judgment in favor of the defendants. That judgment was granted on the theory that the ratification by a majority of the beneficiaries eliminated any action for breach of fiduciary duty in the original transaction. We have jurisdiction under A.R.S. § 12–2101(B).

## Defendant Seymour

Seymour concedes that as a beneficiary of the trust he owed a fiduciary duty to the other beneficiaries. This duty has been characterized by G. Bogert & G. Bogert, The Law of Trusts and Trustees § 191 (rev. 2d ed. 1979), as requiring that one beneficiary not obtain "for himself a special advantage in trust administration." See also *Capital Investors Co. v. Devers*, 360 F.2d 462, 465–66 (4th Cir.1966) (co-beneficiary under a trust could not acquire trust property through foreclosure proceedings in derogation of another's "beneficial interest in the property"). That rule would appear to apply to co-beneficiaries acting together. Thus, under the present trust agreement, if a majority in interest of the beneficiaries agreed to sell to themselves the trust property at an unfairly low price and thereby freeze out a minority interest, they would have violated their duty to those minority beneficiaries. This is analogous to the rule governing majority interests in a partnership or corporation and prohibiting them from unfairly treating minority interests. H. Henn & J. Alexander, Corporations §§ 240, 348 (3d ed. 1983); J. Crane & A. Bromberg, Law of Partnership § 68 (1968); *Jerman v. O'Leary*, 145 Ariz. 397, 701 P.2d 1205 (1985); *Leff v. Gunter*, 33 Cal.3d 508, 189 Cal.Rptr. 377, 658 P.2d 740 (1983); *Page v. Page*, 55 Cal.2d 192, 10 Cal.Rptr. 643, 359 P.2d 41 (1961) (Traynor, J.). If the language of paragraph X of the complaint that "these defendants conspired to deprive the plaintiffs of their interest in the land ... to the financial detriment of these plaintiffs" can fairly be said to allege this claim, and given the liberality with which pleadings are construed we hold that it does, then this claim could only be avoided by showing that the terms of sale were fair and reasonable. About this there is disputed evidence; the trial court did not decide it; summary dis-

position was, therefore, inappropriate. Agreement by those engaged in a breach of fiduciary obligation that it is a good thing, or ratification as the defendants term it, is not a defense.

Seymour also concedes that as a real estate agent, he owed a fiduciary duty to his principal, the beneficiaries of the trust. See *Baker v. Leight*, 91 Ariz. 112, 370 P.2d 268 (1962); *Ornamental and Structural Steel, Inc. v. BBG, Inc.*, 20 Ariz.App. 16, 509 P.2d 1053 (1973). That duty included an obligation to reveal material facts to the principal. That the agent was buying for himself is a material fact. 7 R. Powell, Law of Real Property § 938.-14[1] (1984). Because a majority of the beneficiaries could have sold to Seymour, however, the ratification after notice is a defense.

### Defendant Stewart Title

Stewart Title concedes that if reversal as to Seymour is appropriate, its judgment should also be reversed.

The judgments are reversed and the matter is remanded for proceedings not inconsistent with this opinion.

HATHAWAY, P.J., and LACAGNINA, J., concur.