792 P.2d 775

**UNITED BANK OF ARIZONA, an Arizona corporation; and Dennis A. Rosen, a married man acting in his sole and separate capacity, Plaintiffs/Counterdefendants/Appellants/Cross–Appellees,**

v.

**ASHLAND DEVELOPMENT CORPORATION, an Arizona *corporation*, Defendant/Appellant,**

**and**

**Thomas J. Green and Marcia D. Green, husband and wife, Defendants/Counterclaimants/Appellees/Cross–Appellants.**

**No. 2 CA–CV 89–0173.**

Court of Appeals of Arizona, Division 2, Department B.

Feb. 27, 1990.

Review Denied June 19, 1990.*

---

* Feldman, V.C.J., of the Supreme Court, recused himself and did not participate in the determination of this matter.

Stompoly & Stroud, P.C. by Sally M. Darcy, and Dennis A. Rosen, Tucson, for plaintiffs, counterdefendants, appellants, cross-appellees.

Molloy, Jones & Donahue, P.C. by D. Michael Mandig and George O. Krauja, Tucson, for defendant, appellant.

Lesher & Borodkin, P.C. by Robert O. Lesher, Tucson, for defendants, counterclaimants, appellees, cross-appellants.

## OPINION

FERNANDEZ, Chief Judge.

All parties appeal from the trial court's ruling that reformation is unavailable although a mutual mistake occurred and from its refusal to quiet title to real property. We agree the court erred and conclude that reformation should be granted.

Sometime prior to November 1979, William Small purchased three lots in El Encanto subdivision in Tucson from a couple named Mullin. The Mullins lived in a home that had been built on Lot 91, the largest of the three lots. The other two lots constituted part of the grounds for the home. Apparently because the home was built nearly to the edge of Lot 91, Mullin reconfigured the legal description to add to Lot 91 a 40-foot strip to the south and to remove it from the two adjoining lots, Lots 92 and 94. Small purchased the three lots from the Mullins, intending to remodel their home. He later changed his mind, demolished the house, and began building a new one. After construction began, Small once again changed his mind.

In November 1979, Small deeded the three lots to the Ashland Development Company, a corporation of which he is chairman of the board. The deed utilized the reconfigured legal descriptions created by Mullin. Ashland then began construction of three houses on the three lots, employing the same architect whom Small had retained to build his house. The architect testified that he obtained a copy of the El Encanto subdivision plat map from a blueprint company and designed three houses with similar construction and features, utilizing the original property lines from the plat map.

In late December 1980 or early January 1981, appellees Thomas and Marcia Green saw the house being constructed on Lot 91 and began negotiations to purchase it. At the time they first saw the property, the exterior walls and roofs were completed on all three houses, the pools for Lots 91 and 92 were in place although Lot 91's was not finished, and the brick and wood patio walls for all three were built. Small testified that the houses on Lots 92 and 94 were substantially finished at the time. The testimony was that the architect designed the homes so that a patio wall provided privacy to each home. Between the patio walls is a 15 to 20-foot wide strip that is landscaped and has drip irrigation and lighting systems.

The Greens entered into a contract with Ashland to purchase the home on Lot 91 in March 1981. The contract was prepared by Ashland's attorney who testified that he obtained the legal description from a title company. The description used the reconfigured description for Lot 91. The Greens' deed was recorded the day after the purchase agreement was signed. It also shows the reconfigured legal description.

In May 1983, Ashland conveyed Lots 92 and 94 in trust to Title Insurance Company of Minnesota. The legal description for the two lots also follows Mullin's reconfigured descriptions. Minnesota Title conveyed Lot 92 to appellant Dennis Rosen in May 1984. United Bank purchased Lot 94 at a trustee's sale in January 1985 and conveyed it to Joseph Canchola, subject to the outcome of this litigation, in June 1987. All the deeds utilize the reconfigured legal descriptions.

In July 1986, while Canchola was negotiating to purchase Lot 94, he had the property surveyed in order to purchase a title insurance policy. The surveyor discovered that the legal descriptions in the deeds do not match the improvements on the properties. Included in the disputed 40-foot strip that is shown in the deed to be part of Lot 91 is half of Rosen's living room, 30 feet of his backyard and 15 feet of his swimming

pool. The strip also includes one of Canchola's bedrooms and a substantial portion of his patio. The surveyor testified that the homes and improvements on the properties follow the original subdivision plat lines.

After the error was discovered, United Bank and Rosen submitted quit claim deeds to the Greens, seeking to correct the problem. After the Greens refused to execute them, appellants filed suit in January 1987 for reformation of the deeds and to quiet title to the disputed area. The Greens responded with a counterclaim to quiet title in them and a cross-claim against Ashland for rescission or for damages for fraud. The case was tried to the court in October 1988, and the Greens then withdrew their fraud claim. Although the court stated that "this case cries for relief to plaintiffs," it ruled that the relief of reformation was inappropriate because there had been no showing as to the exact boundary agreed upon by the parties. After motions for reconsideration and for new trial were filed, the court made findings of fact and conclusions of law. One of its conclusions was that there was a mutual mistake in the deed from Ashland to the Greens but that reformation is not available. At the same time, the court determined that no evidence had been offered to support the Greens' counterclaim to quiet title to the property in them. As a result, the court awarded judgment to the Greens on the complaint and to United Bank and Rosen on the counterclaim. The disputed property thus remains with record title in the Greens and possession in Rosen and the Cancholas. All parties have appealed.

## AVAILABILITY OF REFORMATION

The trial court found that the Greens did not know where the boundary line contained in the purchase contract and deed extended and that neither knew the specific location of their south boundary. As a result, it concluded that United Bank and Rosen were actually seeking to rewrite the terms of the parties' contract through the remedy of reformation. In an earlier minute entry, the court cited the case of

*McNeil v. Attaway,* 87 Ariz. 103, 348 P.2d 301 (1959) for the proposition that reformation is not available when the parties have never entered into an express agreement that can be reformed. In that case, the disputed property lay in an open field with no physical features on it that could have been agreed upon to establish the disputed boundary line.

As the trial court correctly noted, the cases cited by appellants involved situations in which a distinguishing feature existed that the parties had agreed constituted the boundary line with the result that the deeds were reformed to be consistent with the agreements. *Berger v. Bhend,* 79 Ariz. 173, 285 P.2d 751 (1955) (fence next to irrigation ditch); *Underdown v. Reche,* 122 Ariz. 439, 595 P.2d 671 (App.1979) (deed included house and rectory that parties agreed were not intended to be included); *Chantler v. Wood,* 6 Ariz.App. 134, 430 P.2d 713 (1967) (north edge of building); *Longshaw v. Corbitt,* 4 Ariz.App. 408, 420 P.2d 980 (1966) (oleander hedge).

The trial court apparently focused on the Greens' testimony that they did not walk a particular line that the parties expressly agreed was the boundary line before they purchased the property. In doing so, the court ignored other evidence as to the realities of the situation.

The court made findings of fact that by the time the Greens first saw the Lot 91 house, the exterior walls of all three houses were in place, the pools on Lots 91 and 92 were dug and in place, and, most importantly, the south patio wall of Lot 91 and the north patio walls of Lots 92 and 94 were in place. The court also found that the Greens did not intend to purchase, and Ashland did not intend to sell, any parts of the structures on the properties now occupied by Rosen and Canchola. In fact, the Greens repeatedly admitted that they never intended to purchase any part of the patio, patio walls, or homes on the Rosen and Canchola lots.

Moreover, both the Greens testified that they saw the property a number of times before they purchased it. The 15 to 20–foot wide area between the patio walls was

landscaped, and drip irrigation systems were installed in it. Thomas Green testified that there had been a discussion with Ashland to the effect that each owner was to be responsible for his own property in maintaining that area. Marcia Green testified in her deposition that at the time they purchased the house, she did not believe that their property included the entire area between the patio walls. The only logical conclusion from the court's findings of fact and from the Greens' testimony, then, is that the parties did indeed agree on a property line, one that runs approximately halfway between the patio walls and one that coincides, incidentally, with the property line shown on the original subdivision plat map.

"If there is a mutual mistake that the seller intended to sell and the buyer intended to purchase a different piece of land than that described in the deed, it forms a basis for an action in reformation." *Chantler v. Wood, supra,* 6 Ariz.App. at 138, 430 P.2d at 717; *accord Longshaw v. Corbitt, supra.* The trial court expressly found that a mutual mistake occurred in this case but erroneously concluded that reformation was not an available remedy, thereby leaving the parties as they presently are with all three properties having clouds on their titles. This case is not like that of *McNeil v. Attaway, supra,* in which there were no physical features which the parties could have agreed was a boundary. Nor is it like that of *McMillon v. Town of Flagstaff,* 18 Ariz. 536, 164 P. 318 (1917), in which the seller was denied reformation because she could not show that the mistake was mutual and because she had accepted the purchase price although she was aware of the misdescription in the deed.

"It is a fundamental principle that equity will not suffer a wrong without a remedy." *Chantler,* 6 Ariz.App. at 138, 430 P.2d at 717.

If an agreement is so vague and indefinite that the court finds it impossible to gather from it the full intention of the parties, it must be held void, for the court cannot make an agreement for the parties. [Citation omitted.] Yet the law does not favor, but leans against, the annulment of contracts on the ground of uncertainty. If the intent of the parties can be ascertained from the express terms of the contract *or by fair implication,* the contract should be sustained by the court.

*Hoffman v. Chapman,* 182 Md. 208, 211, 34 A.2d 438, 440 (1943) (emphasis added). There is no question in this case that the intent of the parties can be ascertained by fair implication. "For the rule stated in this Section [When Mistake of Both Parties as to Written Expression Justifies Reformation] to be invoked, therefore, there must have been some agreement between the parties prior to the writing. The prior agreement need not, however, be complete and certain enough to be a contract." *Restatement (Second) of Contracts* § 155 comment a at 406 (1979). " 'A court of equity would be of little value,' Justice Story said, 'if it could suppress only positive frauds, and leave mutual mistakes, innocently made, to work intolerable mischiefs contrary to the intention of parties.' " *Hoffman, supra,* 182 Md. at 210–12, 34 A.2d at 440 *quoting* 1 Story, *Equity Jurisprudence* §§ 155, 156 (12th ed.).

Because of our determination of the case, we need not address the Greens' cross-appeal issue.

The judgment entered in favor of the Greens on the complaint is reversed, and the case is remanded with directions to reform the deeds to Lots 91, 92, and 94. The judgment entered in favor of Rosen and United Bank on the counterclaim is affirmed. Appellants' request for attorney's fees is denied.

LIVERMORE, P.J., and LACAGNINA, J., concur.